OPINION *Page 2 
{¶ 1} Appellant John Paul Gomez appeals the decision of the Noble County Common Pleas Court, which denied his petition for a civil protection order on behalf of his children against appellee Timothy Dyer. The issues raised on appeal concern his and his children's right to counsel, the weight of the evidence presented at the hearing, and the propriety of the court's statements characterizing the evidence. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} On July 16, 2007, appellant filed a petition for a domestic violence civil protection order against appellee, who is the step-father of appellant's two children. The children live with appellee and their mother, Dagmar Dyer. At the time, the female child was about to turn four and the male child had just turned two. Appellant alleged that appellee physically abused the Gomez children by beating them. More specifically, he alleged that his daughter had a belt imprint on her back caused by appellee beating her with a belt.
 {¶ 3} An ex parte hearing was held immediately. Since the children were spending the next nine days with appellant as part of his summer parenting time, the trial court declined to grant ex parte relief as there was not an imminent danger. (Ex Parte Tr. 5). The full hearing proceeded on July 25, 2007, where appellant proceeded pro se and appellee was represented by counsel. Before presenting his case, appellant disclosed that the emergency room physician and nurse, who both evaluated the child's injury, could not be present.
 {¶ 4} He then called the Noble County Children's Services caseworker to the stand. She noted that in July of 2006, she did an investigation in a different court case regarding the children mimicking sexual activity but could not substantiate abuse or neglect. (Tr. 3-4). She also stated that the female child made allegations against her father last year but then retracted those statements. (Tr. 115-116). Regarding the current referral, she heard the female child say, "Timmy beat me with a belt." (Tr. 12-13). She disclosed that this child also said that appellee beats the male child in the belly, his own infant child and hits Ms. Dyer. (Tr. 115). The caseworker opined that *Page 3 
the female child had a good vocabulary, was intelligent and displayed no evidence of coercion. (Tr. 14).
 {¶ 5} The caseworker had personally viewed the child's injury and described it as a diagonal scratch across the lower back. (Tr. 15). She advised that the case was still under investigation, that the child also attended daycare and that the injury could have been the result of an accident. (Tr. 22). She found good bonding and discipline techniques in the mother's home and noted that the children did not appear fearful at this primary residence. (Tr. 30).
 {¶ 6} The caseworker also identified a letter she received from Washington County (Pennsylvania) Children's Services, an agency that assisted in the investigation. The assisting caseworker reported that the female child was difficult to interview due to her age and was unable to distinguish between her mother's and her father's home or to explain who lived where. (Tr. 32-33). The letter also stated that the female child reported that both parents use physical punishment, that "Timmy" sticks a fork in her privates and that her father kicks her privates. However, later in the interview, the child denied that her father kicks her.
 {¶ 7} Ms. Dyer, the children's mother, testified that she has lived with appellee since April of 2006. She admitted seeing her daughter's injury before appellant picked up the children for visitation, but she described the injury as "two little scratches." (Tr. 37, 39). She stated that the scratches were not red when she saw them and noted that they appeared redder in the photograph submitted at trial. (Tr. 39-40). Ms. Dyer denied that an imprint of a belt was visible and opined that a belt would have left a welt not scratches. She disclosed that appellee's only two belts were braided. (Tr. 40). She also denied that the blue marks on her daughter's back were bruises, explaining that they were advised at both of their children's births that their blue spots represented a skin condition that would fade with age. (Tr. 54). Appellant seemed to remember the existence of this condition. (Tr. 55).
 {¶ 8} Appellant then called two of his friends to testify. First, Mr. Garcia testified that he personally saw the female child's back injury and that it looked like a belt imprint. (Tr. 63, 68). At the time, he heard the child say that appellee did it with a belt. He has also heard the child state that appellee beats her and her brother all the *Page 4 
time and beats the male child as well. (Tr. 60). Ms. Saddler confirmed this testimony. (Tr. 75-76, 78). She added that the male child cries when they bring him back to his mother and the female child says she wishes to live with appellant because her stepfather beats her. (Tr. 74).
 {¶ 9} A Sheriff's Deputy testified that after he received appellant's telephone call reporting the injury, he received a call from a doctor who said he examined the child and was reporting suspected child abuse. (Tr. 80). The Sheriff himself then testified that he told appellant that the Caldwell Police had jurisdiction and advised him to speak to Children's Services. (Tr. 84).
 {¶ 10} Next, appellant called appellee to the stand. Appellee described the child's injury as a scratch and denied that it looked like a belt imprint. (Tr. 92). He denied beating her with a belt or imposing any other physical punishment. (Tr. 93-94). When asked to opine why the child alleged that he beat her with a belt, he responded, "I don't know. She says the same things about you." (Tr. 94).
 {¶ 11} At the close of appellant's case, appellee's counsel sought dismissal of the petition for failure to meet the burden of proof. The court pointed out that it listened to three and one half hours of testimony. The court concluded that it could not discern that the scratches were belt marks from the photographs. (Tr. 133). The court noted that appellant urged that his daughter does not lie but pointed out that she did mistakenly say that he kicked her in the private area. (Tr. 133-134).
 {¶ 12} Appellant then started interrupting the court. When the court explained that it was the court's turn to talk, he kept talking. The court warned, "The next thing you say, you're going to jail," to which he responded, "Okay, I'll go to jail right now. Take me." The court then found him in direct contempt and had him taken to jail where the court held him for what appears to be ten minutes. (Tr. 134, 136). In his absence, the court continued by explaining that the matter is currently being investigated by Children's Services and noting that the child gives conflicting information. The court then dismissed the proceedings, finding it inappropriate to grant a civil protection order based on the information presented. (Tr. 135).
 {¶ 13} The court issued its judgment entry on July 27, 2007, denying the request for a civil protection order and finding that the information presented did not *Page 5 
justify issuance of such order. Appellant filed a timely request for findings of fact and conclusions of law. On August 15, 2007, the trial court issued its findings and conclusions. The court opined that most of the testimony and evidence was irrelevant and that much was hearsay. The court stated that some relevant evidence came from a three-year-old but found that her statements were inconsistent and concluded that her credibility was called into question. The court characterized the photographs as ambiguous at best. The court noted that appellee denied the allegations on the stand. Finally, the court concluded that the evidence was not sufficient to grant the order and that appellant failed to show by a preponderance of the evidence that he is entitled to the relief requested.
 {¶ 14} Appellant filed timely notice of appeal. Appellant's pro se brief sets forth three assignments of error. Appellee has not filed a brief in this action.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 15} Appellant's first assignment of error contends:
 {¶ 16} "THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF APPELLANT'S MINOR CHILDREN IN NOT PROTECTING THE CHILDREN'S INTERESTS WHEN IT FAILED TO ASCERTAIN THE MINORS' RIGHT TO BE REPRESENTED BY LEGAL COUNSEL AS MANDATED BY `JUVENILE RULE 4(A)' AND `R.C. 2151.352;' THUS, VIOLATED A FUNDAMENTAL RIGHT ENTITLED TO ALL CHILDREN IN THE STATE OF OHIO."
 {¶ 17} Appellant essentially complains that the trial court should have inquired into his children's right to counsel and should not have allowed him to proceed pro se in violation of a juvenile rule and a juvenile statute. See Juv.R. 4(A); R.C. 2151.352. He asks us to clarify a situation faced by a sister court in the case of In re A.G.B., 4th Dist. No. 06CA3084, 2007-Ohio-4753, as to whether certain statutes and rules apply where the abuse or neglect alleged is not the result of a complaint by the state but is more like a private custody dispute.
 {¶ 18} We begin by pointing out that Noble County does not have separate courts for domestic relations cases and juvenile cases. Thus, the same judge hears general cases, domestic cases and juvenile cases. However, this does not mean that the court is governed by juvenile rules or statutes when it is acting in its domestic *Page 6 
relations capacity. This situation may be the cause of appellant's erroneous argument here.
 {¶ 19} That is, appellant's petition for a civil protection order is governed by R.C. 3113.31. This statute specifically defines the court as the domestic relations division in the counties that have such a division and the court of common pleas in counties that do not. R.C.3113.31(A)(2). See, also, Title 31 (encompassing domestic relations matters). Thus, a court faced with a petition for a domestic violence civil protection order is functioning in its domestic relations court capacity, not its juvenile court capacity.
 {¶ 20} We also note that R.C. 3113.31(D)(2)(a)(iii) specifically mentions that a continuance may be granted if needed to allow a party to obtain counsel but does not require court inquiry or court appointment of counsel for the parties or for children alleged to be victims. Notably, a civil protection order under R.C. 3113.31 is a civil proceeding, with no attendant right to counsel. See, e.g., State v.Gordon, 10th Dist. No. 03AP-490, 2003-Ohio-6558, ¶ 8, 13;Schottenstein v. Schottenstein, 10th Dist. No. 02AP-842, 2003-Ohio-5032, ¶ 7;West v. West (Dec. 7, 1994), 2d Dist. No. 14600.
 {¶ 21} As for the authority cited by appellant here, none of it is relevant. For instance, Juv.R. 4(A) provides:
 {¶ 22} "Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. When the complaint alleges that a child is an abused child, the court must appoint an attorney to represent the interests of the child. This rule shall not be construed to provide for a right to appointed counsel in cases in which that right is not otherwise provided for by constitution or statute."
 {¶ 23} This rule specifies that the right to counsel therein arises when a person becomes a party to a juvenile court proceeding. Juv.R. 4(A). As explained supra, this is not a juvenile court proceeding as a domestic violence civil protection order is governed by R.C. 3113.31. Besides the language of Juv.R. 4(A), we note that Juv.R. 1(A) limits the scope of the juvenile rules as a whole to regulate only the procedure in all juvenile courts in proceedings within the jurisdiction of those courts. A request for a *Page 7 
civil protection order under R.C. 3113.31 is not within the jurisdiction of the juvenile court but rather lies in the jurisdiction of the domestic relations court or the common pleas court acting as such. R.C.3113.31(A)(2).
 {¶ 24} Similarly, the statute appellant relies on provides in pertinent part:
 {¶ 25} "A child, the child's parents or custodian, or any other person in loco parentis of the child is entitled to representation by legal counsel at all stages of the proceedings under this chapter orChapter 2152. of the Revised Code. If, as an indigent person, a party is unable to employ counsel, the party is entitled to have counsel provided for the person pursuant to Chapter 120. of the Revised Code except in civil matters in which the juvenile court is exercising jurisdiction pursuant to * * * [a certain division of] section 2151.23 of the Revised Code. If a party appears without counsel, the court shall ascertain whether the party knows of the party's right to counsel and of the party's right to be provided with counsel if the party is an indigent person. * * * Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. * * * ." (Emphasis added). R.C.2151.352.
 {¶ 26} This statute specifies that the entitlement to legal representation mentioned therein applies to proceedings under chapter 2151 or 2152. The juvenile court has jurisdiction under these two chapters. See R.C. 2151.011(A). The within action, however, falls under R.C. 3113.31, which is in chapter 3113, not in chapters 2151 or 2151. As such, the right to counsel contained in R.C. 2151.352 is inapplicable here.
 {¶ 27} Finally, the Fourth District case cited by appellant is irrelevant for various reasons. For example, it did not arise from a civil protection order, and thus, it was not governed by R.C. 3113.31. Rather, that case purported to arise under the juvenile court's jurisdiction where a parent filed a complaint for custody alleging abuse, neglect and dependency. See In re A.G.B., 4th Dist. No. 06CA3084,2007-Ohio-4753 (where the dissent sua sponte opined that private custody dispute is not covered by chapter 2151 regardless of the fact that the parent entitled his petition as a complaint for abuse, neglect or dependency). Contrary to appellant's suggestion, whether the majority or the dissent was correct in A.G.B. is not a question this court can answer as *Page 8 
it is not the situation we have before us. For all of these reasons, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 28} Appellant's second assignment of error alleges:
 {¶ 29} "THE TRIAL COURT ABUSED ITS DISCRETION IN SETTING THE BURDEN OF PROOF IN `PREPONDERANCE OF EVIDENCE' HIGHER THAN ITS REQUIRED STANDARD; MOREOVER, CONTRARY TO SIMILAR CASES IT DECIDED ACCORDING TO THE PROPER STANDARD TEST OF PREPONDERANCE; AS SUCH, EXHIBITED CLEAR PREJUDICE IN THIS SPECIFIC CASE."
 {¶ 30} Appellant contends that although the trial court said it used the preponderance of the evidence standard, the conclusion that he failed to show entitlement to the civil protection order is absurd as preponderance is a low standard and his evidence could be characterized as clear and convincing. In making this argument, he questions the credibility of appellee and Ms. Dyer. As such, he is essentially arguing that the judgment was against the manifest weight of the evidence. He concedes that reversal on such ground is difficult due to our reluctance to substitute our judgment for that of the trial court on credibility and weight, citing Gomez v. Gomez, 7th Dist. No. 06NO330,2007-Ohio-1559, ¶ 42.
 {¶ 31} In order to grant a civil protection order, the trial court must find that the petitioner or the petitioner's family or household members are in danger of domestic violence by a family or household member. R.C. 3113.31(C). The element of family or household member is not disputed here. See R.C. 3113.31(A)(3). The dispute is whether domestic violence has occurred. Domestic violence means the occurrence of one or more of the following acts against a family or household member: (a) attempting to cause or recklessly causing bodily injury; (b) placing one, by threat of force, in fear of imminent serious physical harm or committing certain criminal violations; (c) committing any act with respect to a child that would result in the child being an abused child as defined in R.C. 2151.031; (d) committing a sexually oriented offense. R.C. 3113.31(A)(1). *Page 9 
 {¶ 32} The petitioner must meet his burden of proof by a preponderance of the evidence. Felton v. Felton (1997), 79 Ohio St.3d 34, 42. See R.C.3113.31(D) (court shall "proceed as in a normal civil action"). Preponderance of the evidence means the greater weight of evidence, that is necessary to destroy the equilibrium. State v. Stumpf (1987),32 Ohio St.3d 95, 102. It is that proof which leads the jury to find that the existence of the contested fact is more probable than its nonexistence. Id.
 {¶ 33} Judgments supported by some competent, credible evidence will not be reversed on appeal as being against the manifest weight of the evidence. State v. Wilson, 113 Ohio St. 382, 2007-Ohio-2202, ¶ 24 (a civil sexual predator case), citing C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 280. When addressing a trial court's decision on weight and credibility, the reviewing court is guided by the presumption that the findings of the trial court are correct.Wilson, 113 Ohio St. 382 at ¶ 24, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80-81. The rationale for this presumption is that the trial court is in the best position to view witnesses and observe their demeanor, voice inflection, and gestures. Id.
 {¶ 34} "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Id.
 {¶ 35} Besides reiterating these well-established premises, this newWilson precedent has definitively determined that the standard for evaluating the weight of the evidence in a civil case is even more deferential to the finder of fact than the criminal standard.Wilson, 113 Ohio St. 382 at ¶ 26 (also noting that Supreme Court precedent tends to merge sufficiency and weight in civil cases, whereas the concepts have been distinguished in criminal cases). The Court pointed out that criminal appeals allow reweighing but civil appeals require affirmance of judgments supported by some competent, credible evidence. Id.
 {¶ 36} Here, it was undisputed that the female child had an injury on her back. The issues were whether the child's injury was caused by a belt lash, if so, whether appellee was the perpetrator of this act and whether he has beat the children in the past. As the trial court suggested, the case had many credibility issues. Appellant and *Page 10 
his witnesses insisted that the scratches on the child's back contained a clear imprint of a belt. Appellee and Ms. Dyer, who saw the injury prior to appellant, denied the injury looked like a belt imprint. Ms. Dyer stated that appellee's two belts are braided and explained that the blue spots are not bruises but are a skin condition existing since birth, which appellant seemed to concede. The caseworker, who also saw the injury in person, could not say that she saw a belt imprint either. The court, who viewed a photograph taken at the hospital, where appellant brought his daughter after finding the injury, could not discern belt marks; nor can this court upon viewing the photograph.
 {¶ 37} We also note that one of appellant's witnesses testified that the child wishes to live with her father. Although she testified that this was due to appellee's violence, one could infer a motive to fabricate accusations against a step-father in order to change residences. The court could also evaluate appellant's testimony and worry about his motive to influence the children's custody since a civil protection order against appellee would deprive the children of their primary residence.
 {¶ 38} Importantly to the case here, appellee testified and denied that he caused the injury or that he ever beat the child. The trial court saw his demeanor, voice inflection, gestures, eye movements, etc. and could properly determine his testimony to be truthful.
 {¶ 39} Although the child attributed her injury to appellee beating her with a belt, the child did not testify so the court could judge her credibility first-hand. Rather, the court had only the second-hand statements of witnesses. It seems undisputed that the child made the accusation. However, it is not undisputed that the child was being truthful. Although appellant takes much offense to such characterization of his child, saying that a three-year-old has been untruthful is not the horrendous criticism that appellant believes it is. Based upon her prior confusion in interviews, her recanted accusation against appellant and her lack of fear around appellee, the court could rationally conclude that she tells stories, especially after witnessing the accused testify and dispute her stories first-hand.
 {¶ 40} On the other hand, one could reasonably conclude that the child's accusations against appellee are truthful. However, this does not make the trial *Page 11 
court's judgment that appellee was not the perpetrator contrary to the manifest weight of the evidence. Consequently, we are constrained to affirm the trial court's conclusion on such matter. Although appellant's fear is understandable, we cannot substitute our judgment for that of the trial court on the topic of evidence weighing or credibility gauging.
 {¶ 41} In presenting the issue under this assignment, appellant also seems to ask if we could look at Ms. Dyer's testimony in the custody case and compare it to her testimony in this action to show that she lacks credibility because she stayed at appellee's house more nights than she admitted in the custody case. He acknowledges that we have held that the trial court cannot take judicial notice of its other court proceedings even if between the same parties. See Jarvis v. Jarvis, 7th Dist. No. 03JE26, 2004-Ohio-1386 (noting that the appellate court does not have the record from the prior suit if it was not introduced at the trial below). He questions whether we can avoid the implication of this holding here since we are the court that reviewed his divorce/custody case and thus he believes we still have the record before us.
 {¶ 42} We must answer this question in the negative. On appeal, we review the record from the trial court regarding only the case before us, which would include any parts of other cases that were presented for the trial court's review in the current case. Merely because we have reviewed prior trial court cases does not mean we can take judicial notice of the testimony therein and use such prior testimony to weigh the evidence on appeal. In other words, we use our prior holdings as case law to be applied as legal precedent in subsequent cases, not as factual sources for credibility weighing if a party happens to come before us again. Regardless, appellant's suggestion would not change the result of this assignment of error as Ms. Dyer's credibility was not the main issue and no conflicting testimony is apparent.
 {¶ 43} Appellant also alleges here that the trial court's decision was the result of prejudicial bias. In support, he first points to a January 17, 2006 ex parte hearing on Ms. Dyer's civil protection order petition filed against him, which he says resulted in the court granting the ex parte order and denying the final order. He then compares the trial court's decision on his petition and asks why the court granted Ms. Dyer an ex *Page 12 
parte order but denied him an ex parte order. As reviewed above, we cannot view the hearing transcript in a different civil protection order suit that was not entered into the record of the trial court below. In any event, the trial court here reasonably explained that it denied appellant's request for an ex parte order because appellant had the children for the next nine days, during which time the court held a final hearing. Appellant did not express dissatisfaction with the court's rationale at the ex parte hearing.
 {¶ 44} As other evidence of the trial court's prejudice against him, he points to the court sustaining the defense's objections to him asking his friend if the marks on the child looked like belt imprints. However, after sustaining multiple objections to appellant's repeated attempts to ask his friend to identify the injury as a belt imprint, the court specifically assisted him in laying a foundation for the testimony by telling appellant to ask the witness how many belt injuries he has seen in order to establish for the record the witness's ability to determine what a belt mark looks like. (Tr. 68). Thereafter, the desired testimony did end up being accepted after the witness said he saw belt marks on a person's back in "the eighties." Contrary to appellant's contention, the fact that after the court admitted the evidence, the court commented, "for what ever weight it has," does not establish prejudice or bias. (Tr. 68-69).
 {¶ 45} Appellant also contends that the trial court showed its prejudice by using its deputy to intimidate him. However, being a pro se litigant does not allow one to ignore court rulings and continue whatever line of questioning one wishes. As stated in theGordon case cited above:
 {¶ 46} "Pro se civil litigants are bound by the same rules and procedures as those litigants who retain counsel. They are not to be accorded greater rights and must accept the results of their own mistakes and errors." State v. Gordon, 10th Dist. No. 03AP-490,2003-Ohio-6558, ¶ 14, citing Meyers v. First Natl. Bank ofCincinnati (1981), 3 Ohio App.3d 209, 210.
 {¶ 47} If appellant were a trained attorney, he would have been aware of the need to establish a foundation or the proper way to argue a legal point regarding an objection. Arguing the bare desire to present certain testimony and repeating the same question to which objections had been sustained are not proper litigation *Page 13 
methods. Thus, the deputy's warning was not the result of prejudice but rather was a rational attempt to keep courtroom decorum and to enforce court rulings. (Tr. 67). This is also true where, at the end of trial, appellant kept talking over the court, even after the court warned that he would be held in contempt if he spoke once more. Rather than remain silent for the court to finish its observation, appellant again interrupted and expressly asked to be taken to jail. (Tr. 124). Prejudice is not established by these facts.
 {¶ 48} Regardless, this is not the proper place to raise a claim of trial court bias. The Ohio Constitution vests the sole authority for determining the disqualification of a common pleas court judge in the Chief Justice of the Ohio Supreme Court or his designee. See Ohio Const. Art. IV, Section 5(C); Beer v. Griffith (1978), 54 Ohio St.2d 440, 441. Thus, appellant's only remedy for this bias allegation was the filing of an affidavit of interest, bias, prejudice or disqualification with the clerk of the Ohio Supreme Court. See R.C. 2701.03. See, also,Scibelli v. Pannunzio, 7th Dist. No. 05MA170, 2006-Ohio-5652, ¶ 25-26. A court of appeals is without authority to render a decision as to disqualification or to void a trial court's judgment on the basis of alleged bias. Beer, 54 Ohio St.2d at 441. The only exception is where the appellate court is reviewing whether a judge's behavior prejudiced or biased criminal jurors, and this was not a jury trial or a criminal trial for that matter. Scibelli, 7th Dist. No. 05MA170 at ¶ 26, citingState v. Wade (1978), 53 Ohio St.2d 182, 188. This assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 49} Appellant's third assignment of error complains:
 {¶ 50} "THE TRIAL COURT STRAYED FROM HUMAN DECENCY AND SOUND JUDICIAL RATIONALE IN BELITTLING THE BEATING OF A DEFENSELESS 3 YEAR OLD CHILD BY CALLING HER A LIAR FOR DECLARING SHE WAS PHYSICALLY ABUSED; FURTHERMORE, DISMISSING RELEVANT EVIDENCE AND WITNESSES AS HEARSAY; NOTWITHSTANDING THE CHILD'S MEDICAL RECORD, AND PHOTOGRAPHS OF HER INJURY; THEREFORE, UNREASONABLY ABUSED ITS DISCRETION." *Page 14 
 {¶ 51} First, appellant asks us to recognize that he never said his daughter was a liar. Rather, he was quoting appellee, whom he heard in the background of a telephone call. (Tr. 103). We acknowledge this and note that he clarified his quotation and thus rectified the trial court's and defense counsel's misunderstanding before trial ended. (Tr. 130).
 {¶ 52} Appellant next reiterates his complaint that the trial court characterized his daughter as a liar. At the end of trial, when the court was making its conclusions, the court noted that appellant believes his daughter is truthful. (Tr. 133). The court then reasoned that the child said appellant, her father, kicked her in her private area. Appellant interrupted to say that the child retracted this statement, and the court continued, "Because she lied, didn't she?" (Tr. 134). At this point, appellant refused to stop talking and was removed from the courtroom. The court then concluded that the child gives conflicting statements, which are currently under investigation by Children's Services. (Tr. 135).
 {¶ 53} As aforementioned in addressing the second assignment of error, the court's decision is not contrary to the manifest weight of the evidence in general or for the specific reason that the court questioned the child's credibility. The court could reasonably have agreed with appellant's claim that the child's prior accusation against appellant did not support lowering her level of assigned credibility because the child was confused when she stated that appellant kicked her in the private area. (Appellant explains on appeal that she used to call her step-father "Daddy" as well). However, the fact that one reasonable person could rule one way does not mean that it is contrary to the weight of the evidence for the trial court to use her prior accusation and retraction as evidence weighing against her credibility in this case.
 {¶ 54} Appellant also complains here that the trial court's judgment entry seems to downplay certain evidence by describing it as hearsay. He cites a Supreme Court case and argues that the child's statements to the emergency room physician as related by the physician to the deputy did not constitute hearsay. However, the deputy did not testify that the physician told him what the child said; he merely stated that the physician called to report possible child abuse. Moreover, the deputy did not know the physician's name, and as defense counsel pointed out, the mere fact that a caller *Page 15 
identifies himself over the telephone as an emergency room physician does not positively identify that person as such.
 {¶ 55} Regardless, the Supreme Court case cited by appellant is inapplicable here. In that case, the Court held that a child need not have been found competent to testify in order to have the child's statement admitted as an exception to the hearsay rule if the statement was made for the purpose of medical diagnosis or treatment under Evid.R. 803(4). State v. Muttart, 116 Ohio St.3d 5, 2007-Ohio-5267. This holding may have been applicable had the nurse or physician testified here. However, they did not.
 {¶ 56} This Muttart holding also may have had relevance if the medical records had been properly identified and authenticated and if theyactually contained a revelation that the child herself told the medicalpersonnel that the marks on her back were caused by her step-fatherbeating her with a belt. That is, the medical records here may list appellee as the perpetrator; however, they do not disclose that the child expressed this personally to the author of the records. In fact, at one place, it is specified that the patient's father advised that the step-father spanked the child with a belt. As such, this citation does not further appellant's cause.
 {¶ 57} Finally, the court allowed appellant to present multiple hearsay statements of the child. For instance, the caseworker, appellant, and his two friends were all permitted to testify that the child told them that she received the marks on her back when appellee beat her with a belt. Thus, the court in fact considered the child's claims by way of hearsay but found them to lack credibility.
 {¶ 58} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
 Donofrio, J., concurs. Waite, J., concurs. *Page 1