[Cite as *Kohus v. Daly*, 2016-Ohio-73.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| FRANK KOHUS, | : | |
| | | CASE NO. CA2015-05-042 |
| Petitioner-Appellee, | : | |
| | | O P I N I O N |
| | : | 1/11/2016 |
| - vs - | | |
| | : | |
| AMANDA DALY, | : | |
| Respondent-Appellant. | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2014 DRH 00859

Frank Kohus, 1386 Emerson Lane, Milford, Ohio 45150, petitioner-appellee, pro se

Cornetet, Meyer, Rush, & Kirzner, Co., LPA, Mark C. Eppley, 123 Boggs Lane, Cincinnati, Ohio 45246, for respondent-appellant

**M. POWELL, P.J.**

{¶ 1} Respondent-appellant, Amanda Daly (Mother), appeals a decision of the Clermont County Court of Common Pleas, Domestic Relations Division, issuing a domestic violence civil protection order (DVCPO) against her and in favor of petitioner-appellee, Frank Kohus (Father), acting on behalf of the parties' minor children.

{¶ 2} The parties have three daughters, J.K. (born in 2002), L.K. (born in 2008), and

N.K. (born in 2010). The parties were divorced in June 2014; custody of the children was granted to Mother. The record indicates that the parties were separated three years before their divorce and that during that period of time, the children lived with Mother.

{¶ 3} On July 8, 2014, Father filed for and was granted an ex parte temporary DVCPO against Mother on behalf of the parties' children. The petition alleged that the children sit outside a strip club "after hours waiting in the car" while Mother is working in the club, and that when they are with Mother, the children are exposed to "perverted men that make the girls feel uncomfortable." The petition also alleged that "most of the time, [Mother] is sleeping during the day and has the oldest child watch the younger girls by herself." The matter was scheduled for a full hearing before a magistrate on July 17, 2014. However, due to a lack of service on Mother, the hearing was continued and rescheduled for August 7, 2014.

{¶ 4} At the August 7, 2014 hearing, both parties appeared pro se. Sandy Kelly, an investigator at Clermont County Children's Services, testified. Following Mother's cross-examination of Kelly, Mother sought and was granted a continuance so that she could secure a statement or a witness from her workplace. The hearing was then continued in progress until August 18, 2014.

{¶ 5} On August 18, 2014, both parties were present. Father appeared pro se; Mother was represented by counsel. Following the testimony of J.K., the parties' oldest daughter, the hearing was continued in progress until September 16, 2014.

{¶ 6} At the September 16, 2014 hearing, Father appeared pro se; Mother was present, represented by counsel. A guardian ad litem (GAL) appointed for J.K. in a truancy case, testified. Relatives of the parties, Mother's former boyfriend, and Father as if on cross-examination, also testified. The hearing was then continued in progress until October 9, 2014.

{¶ 7} On October 9, 2014, the parties appeared for a final hearing. Mother was represented by new counsel. At the hearing, Father, once again proceeding pro se, completed his testimony. Mother's younger sister testified on behalf of Mother. At the conclusion of the hearing, the magistrate issued a one-year DVCPO. The magistrate found that Mother had committed domestic violence toward the children because she had created a substantial risk to the children's health or safety by violating a duty of care, protection, or support. Mother filed objections to the magistrate's decision. On April 23, 2015, the trial court overruled the objections and adopted the magistrate's decision.

{¶ 8} Mother appeals, raising four assignments of error.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT ERRED IN FAILING TO INQUIRE AS TO WHETHER THE APPELLANT WISHED TO SEEK COUNSEL UNTIL AFTER THE CROSS-EXAMINATION OF SANDY KELLY, WAS COMPLETE.

{¶ 11} Mother argues the trial court erred in proceeding with the initial full hearing on August 7, 2014, and allowing Kelly to testify because Mother appeared pro se and was thus forced to cross-examine Kelly without counsel. Mother asserts that because Kelly was the most important witness and the trial court referred to her testimony in its decision, the trial court had "a duty to make sure the parties [were] fully aware of the proceedings and [their] potential ramifications and consequences."

{¶ 12} The magistrate began the August 7, 2014 hearing by noting both parties were present without counsel, by identifying Kelly and the GAL, and by asking the parties to identify people in the back of the courtroom. Following Mother's identification of three persons and the swearing of both parties and Kelly, the magistrate began questioning Kelly. Following Kelly's direct examination, the magistrate asked the parties whether they had any questions of Kelly. Father replied he did not; Mother replied, "Yes, actually." Mother then

proceeded to cross-examine Kelly.

**{¶ 13}** Following Mother's cross-examination of Kelly, the magistrate asked the parties whether they wished to present evidence, and in the case of Mother, whether she wished to testify or call a witness. Mother replied "yes," stating

> I guess I can call a witness and testify. I just have one question for you. When we walked in here this morning my intention before anybody was called, I just didn't really get the opportunity to speak, was to ask if it was possible for us to get a continuant [sic] because there's one huge piece of information that I need to see.

After inquiring about Mother's evidence, the magistrate granted a continuance so that Mother could secure a statement or a witness from her workplace. The hearing was then continued to August 18, 2014. Mother was represented by counsel at that hearing as well as the next two hearings.

**{¶ 14}** Petitions for civil protection orders are civil in nature, not criminal. *Butcher v. Stevens*, 182 Ohio App.3d 77, 2009-Ohio-1754, ¶ 13 (4th Dist.). Consequently, there is no attendant right to counsel in a DVCPO action under R.C. 3113.31. *Gomez v. Dyer*, 7th Dist. Noble No. 07 NO 342, 2008-Ohio-1523, ¶ 20.

**{¶ 15}** R.C. 3113.31(D)(2)(a)(iii) provides that the trial court "may grant a continuance" of a full hearing if the "continuance is needed to allow a party to obtain counsel."[1] However, this does not mean that the trial court must always continue a full hearing any time one or both parties appears at the hearing without counsel, nor does such situation require court inquiry. *Gomez* at *id.* Rather, a party must request a continuance of the full hearing if he or she wants or needs additional time to obtain counsel. *See Evans v. Evans*, 10th Dist.

---

1. Contrast the discretionary authority of the trial court under R.C. 3113.31(D)(2)(a)(iii) to grant a continuance in order for a party to obtain counsel with the mandatory duty of the juvenile court to inquire of parties appearing before it without counsel. In this regard, R.C. 2151.352 provides, in pertinent part, that "If a party appears without counsel, the court shall ascertain whether the party knows of the party's right to counsel ***. The court may continue the case to enable a party to obtain counsel * * *." There is no duty of the trial court to make such an inquiry in DVCPO proceedings.

Franklin No. 08AP-398, 2008-Ohio-5695; *Lane v. Brewster*, 12th Dist. Clermont No. CA2011-08-060, 2012-Ohio-1290.

{¶ 16} Upon reviewing the record, we find that the trial court did not err in failing to inquire as to whether Mother wished to seek counsel before proceeding with the initial full hearing on August 7, 2014.

{¶ 17} The full hearing was initially scheduled for July 17, 2014, but was subsequently continued and rescheduled for August 7, 2014. Mother was served with a copy of Father's DVCPO petition and a summons on July 18, 2014. The summons specifically stated that Mother had a right to counsel. Mother thus had three weeks to obtain counsel before the August 7, 2014 hearing, yet she appeared at the hearing without counsel. Although she had opportunities to do so during the hearing, Mother never requested a continuance in order to obtain counsel. In fact, Mother never inquired about her right to counsel.

{¶ 18} Once Mother was represented by counsel at subsequent hearings, her counsel could have sought to recall Kelly to further examine her. However, counsel for Mother never did. Further, while counsel for Mother moved to dismiss the case during the third hearing on the ground, inter alia, that Kelly's testimony was hearsay, counsel never made objections to Kelly's testimony. Then, at the beginning of the final hearing on October 9, 2014, Mother's new counsel moved for a continuance on the grounds (1) he needed transcripts of the previous hearings, and (2) because Mother did not have the opportunity to inform the court at the initial hearing that she was in the process of retaining counsel, Mother "didn't have the ability to have counsel representing her on cross-examination of Ms. Kelly." The magistrate denied the request for a continuance and proceeded with the final hearing.[2]

---

2. In denying the request, the magistrate stated, "With respect to your statements regarding the August 7th hearing, while I have not listened to the recording, I always ask both parties if they're ready to proceed and I believe I did so in this case. And so your oral motion is denied and you may call your first witness." The record indicates, however, that the magistrate never asked the parties during the August 7, 2014 hearing if they were both ready to proceed.

{¶ 19} R.C. 3113.31(D)(2)(a) mandates a trial court to give a respondent an opportunity to be heard at the full hearing. Here, we find that Mother had an opportunity to be heard at the August 7, 2014 hearing consistent with R.C. 3113.31 and due process. Mother was able to cross-examine Kelly and was given the opportunity to testify and present evidence. Ultimately, Mother did not testify at the hearing because she successfully sought a continuance so that she could secure a statement or a witness from her workplace. Mother laments the fact she was forced to cross-examine Kelly without the assistance of counsel. However, Mother chose to appear at the initial full hearing without counsel. Further, notwithstanding her assertion to the contrary, Mother had opportunities during the hearing to request a continuance in order to obtain counsel but failed to do so. *See Dupal v. Sommer*, 5th Dist. Stark No. 2009CA00032, 2009-Ohio-5791 (it is unfortunate that some parties pr[o]ceed pro se, but the trial court/magistrate is not there to try their case or to exercise their rights for them).

{¶ 20} For the foregoing reasons, Mother's first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} THE TRIAL COURT ERRED IN NOT CONSIDERING SANDY KELLY, AN INVESTIGATOR FOR CLERMONT COUNTY CHILDREN'S SERVICES, AN EXPERT FOR THE PURPOSE OF HER TESTIMONY.

{¶ 23} Mother argues that Kelly should be considered an expert witness because her testimony violated the Ohio Supreme Court's holding in *State v. Boston*, 46 Ohio St.3d 108 (1989), that "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." Mother essentially challenges Kelly's testimony on the grounds that Kelly improperly (1) testified as to the veracity of the children's statements, and (2) continued to testify after revealing "the case for abuse was closed" because "there was no substantiation to the allegations."

- 6 -

{¶ 24} Mother acknowledges she did not object to Kelly's testimony during the August 7, 2014 hearing, and thus, she has waived all but plain error. Plain error in a civil case is an error that "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

{¶ 25} The doctrine of plain error in civil cases is not favored and thus, its application must be limited to "those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Id.* at 121; *Fender v. Miles*, 185 Ohio App.3d 136, 2009-Ohio-6043, ¶ 28 (12th Dist.).

{¶ 26} We find that this civil case is not one of "those extremely rare cases where exceptional circumstances require" the application of plain error. Mother broadly asserts that Kelly improperly testified as to the veracity of the children's statements, but fails to cite to specific portions of the August 7, 2014 hearing. Generally, it is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error. *See Cravens v. Cravens*, 12th Dist. Warren No. CA2008-02-033, 2009-Ohio-1733; App.R. 16(A)(7). Nonetheless, a review of the record shows that Kelly testified, "the concerns the children are voicing are legitimate in my opinion."

{¶ 27} While Kelly's statement was inappropriate, it does not warrant a reversal of the case. The record shows that in overruling Mother's objections and adopting the magistrate's decision, the trial court did not rely on Kelly's testimony. Nor did the court make any reference to anything the children told or may have told Kelly. Indeed, the only reference by the trial court to Kelly's testimony is a laconic statement made in passing that Kelly and the GAL "testified as to their concerns for the safety of the children." By contrast, the trial court

primarily relied on J.K.'s testimony and referred to it in detail in its decision.

{¶ 28} Mother also asserts that Kelly improperly continued to testify after revealing that "the case for abuse was closed" because "there was no substantiation to the allegations."

{¶ 29} Kelly testified the case was assigned "in the Alternative Response Unit" following allegations all three children had witnessed a domestic altercation between Mother and her boyfriend. With regard to the so-called "case for abuse," Kelly testified it stemmed from allegations by the children they were left alone in a vehicle while Mother was at work. Kelly testified that case "was investigated actually by myself. All parties involved denied that allegation so that case was closed." Subsequently, Kelly testified about several of the children's concerns while in Mother's care.

{¶ 30} Given the fact that the trial court did not rely on Kelly's testimony in adopting the magistrate's decision, but rather relied on J.K.'s testimony, we find that Kelly's testimony does not rise to the level of plain error requiring a reversal.

{¶ 31} Mother's second assignment of error is accordingly overruled.

{¶ 32} Assignment of Error No. 3:

{¶ 33} THE TRIAL COURT ERRED IN ALLOWING * * * THE GAL FOR THE OLDEST CHILD, [J.K.], IN THE TRUANCY CASE TO TESTIFY IN THE DVCPO CASE.

{¶ 34} Mother argues the trial court erred in allowing the GAL to testify about the well-being of all three children because the GAL was appointed solely to represent J.K. in a truancy case. Mother also asserts the GAL's testimony was not based upon an independent investigation by the GAL but rather, was based solely upon the previous testimony of Kelly and J.K.

{¶ 35} We find the trial court did not err in allowing the GAL to testify about the well-being of all three children at the September 16, 2014 hearing. The record shows that on that day, two matters were before the magistrate: the continuation of the full DVCPO hearing and

a motion by Father for a change of custody. Thus, as the trial court aptly stated in its decision overruling Mother's objections, "[b]ecause the GAL has had contact with everyone in the family, ascertaining her opinion was appropriate and in the children's best interest."

{¶ 36} Mother also asserts the GAL's testimony was not based upon an independent investigation by the GAL because when asked by Father "what have you found in your investigation?" the GAL replied, "I have found pretty much the same thing that Sandy Kelly testified to[.]"

{¶ 37} We find that Mother's assertion is based upon sheer speculation and is completely without evidentiary support. Simply because the GAL concurred with Kelly's testimony does not mean the GAL did not perform an independent investigation as prescribed under Sup.R. 48. The GAL testified she had talked to the parties and the children several times, had visited Father's home several times, and had talked to relatives of the parties. The GAL further testified she "ha[d] real concerns about the children's safety when they're in mother's care."

{¶ 38} Mother's third assignment of error is overruled.

{¶ 39} Assignment of Error No. 4:

{¶ 40} THE TRIAL COURT ERRED IN CONCLUDING THAT THE APPELLANT CREATED A "SUBSTANTIAL RISK" TO THE HEALTH OR SAFETY OF THE CHILD, BY VIOLATING A DUTY OF CARE, PROTECTION OR SUPPORT, PURSUANT TO OHIO REVISED CODE §2919.22(A).

{¶ 41} Mother argues the trial court erred in issuing a DVCPO against her on behalf of the parties' children. Mother asserts that the evidence presented does not support the trial court's finding she committed domestic violence against the children because they were endangered children.

{¶ 42} A petition for a DVCPO is governed by R.C. 3113.31. Pursuant to that statute,

in order to grant a DVCPO, a "trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton v. Felton,* 79 Ohio St.3d 34 (1997), paragraph two of the syllabus. For the purpose of this case, domestic violence "means the occurrence of one or more of the following acts against a family or household member: [c]ommitting any act with respect to a child that would result in the child being an abused child, as defined in [R.C.] 2151.031." R.C. 3113.31(A)(1)(c).

{¶ 43} A trial court's decision to grant or deny a DVCPO will not be reversed where such decision is supported by the manifest weight of the evidence. *Caramico v. Caramico,* 12th Dist. Clermont No. CA2015-03-025, 2015-Ohio-4232, ¶ 26. Under a manifest weight challenge, a judgment will not be reversed as long as the judgment is supported by some competent, credible evidence going to all essential elements of the case. *Id.* The appellate court must be guided by a presumption that the trial court's factual findings are correct because the trial judge is best able to view the witnesses and observe their demeanor and use these observations in weighing the credibility of the proffered testimony. *McBride v. McBride,* 12th Dist. Butler No. CA2011-03-061, 2012-Ohio-2146, ¶ 11.

{¶ 44} At the outset, we note Mother's assertion that given the definition of "child abuse and neglect" in 42 U.S.C. 13925(3), the trial court evidently issued the DVCPO against her to punish her for not leaving an alleged abusive relationship with her former boyfriend. The federal statutory provision provides that failure to leave an abusive relationship is not in itself child abuse or neglect. Mother's reliance on 42 U.S.C. 13925(3) is misplaced. In addition, the record does not support Mother's assertion.

{¶ 45} As stated above, domestic violence under R.C. 3113.31 in this case includes "[c]ommitting any act with respect to a child that would result in the child being an abused child, as defined in [R.C.] 2151.031." R.C. 2151.031(B) defines an abused child as any child

who is endangered under R.C. 2919.22. As relevant to this case, a child is endangered when a parent "create[s] a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." R.C. 2919.22(A). "'Substantial risk' means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8); *Allan v. Allan*, 8th Dist. Cuyahoga No. 101212, 2014-Ohio-5039, ¶ 21.

{¶ 46} When Father filed his petition for a DVCPO, the parties' three children were 11, 6, and 4 years of age. J.K. testified that one late evening in June 2014, Mother took her and her four-year-old sister, N.K., to Mother's workplace in Lexington, Kentucky; that the girls stayed in the car all night long while Mother worked; and that they did not return home in Ohio until the next morning just before school began. J.K. testified that Mother's former boyfriend stayed in the car with them but that he slept. J.K. testified she was unable to sleep because she is "very uncomfortable sleeping in cars" and "there was a lot of people coming out outside and sleeping."

{¶ 47} J.K. testified that during the one and one-half months prior to her testimony, Mother and the children "were running around a lot" and stayed in four or five different hotels, and that prior to that, they had lived in Hamilton, Ohio, then moved to Kentucky, and then moved to Batavia, Ohio. J.K. also testified that at her request, she was left home because she did not want to "sit in the car all the time." As a result, J.K. was left home alone once overnight and another time with only a 12-year-old friend. At other times, Mother would leave with J.K.'s sisters between 4 p.m. and 6 p.m. and not return until 8 p.m. Most of the times, Mother and J.K.'s sisters were home around 11 p.m. J.K. testified that while she was not afraid, she was "kind of worried."

{¶ 48} J.K. described an incident during which Mother started falling asleep while driving home with the children. According to J.K., Mother asked her to watch the road for

her, they missed their exit, got lost, and wound up in an accident. As a result of the incident, J.K. missed the first two hours of school. J.K. also described witnessing an argument between Mother and the former boyfriend during which the boyfriend "body slammed" Mother, that is, "picked her up and dropped her on the ground."

{¶ 49} The only testimony offered to controvert J.K.'s testimony was that of Mother's former boyfriend who denied spending the night in a car with J.K. and N.K. on the parking lot of Mother's workplace. He also denied "slamming" Mother down in front of the children. He admitted, however, getting into an argument with Mother in front of or near the children and holding "[Mother] down until she calmed down."

{¶ 50} Mother did not testify at any of the four hearings. During the initial full hearing, she asked for and was granted a continuance so that she could secure a statement or a witness from her workplace to show it would be impossible to leave the children in a car on the parking lot of her workplace. However, Mother never offered substantiating evidence in the three subsequent hearings.

{¶ 51} During the September 16, 2014 hearing, the GAL testified J.K. had been adjudicated a truant for missing school while in Mother's care and that they were waiting for disposition. In her brief, Mother asserts several times that J.K. "was not adjudicated a truant as the matter against [J.K.] was dismissed." Mother offers no evidence in support of her assertion. There is no evidence in the record that the matter was dismissed.

{¶ 52} Mother challenges the issuance of the DVCPO, arguing that J.K.'s testimony was "shaky at best." While J.K.'s testimony had some discrepancies, testimonial inconsistencies generally do not render decisions against the manifest weight of the evidence. *McBride*, 2012-Ohio-2146 at ¶ 21.

{¶ 53} Mother also argues that the trial court failed to consider Father's testimony that he consumes alcohol in violation of his probation and that he was unhappy with the fact

Mother was granted custody of the children after the parties' divorce.

{¶ 54} In its decision adopting the magistrate's decision, the trial court stated it had "reviewed all of the hearing transcripts" and "considered any inconsistency between the witnesses and the credibility of each witness's testimony." The trial court was in the best position to weigh the credibility of the witnesses. *Caramico*, 2015-Ohio-4232 at ¶ 29. In finding that Mother committed domestic violence against the children because they were endangered children, the trial court primarily and extensively relied on J.K.'s testimony, and only referred to the testimony of Kelly, the GAL, and Mother's former boyfriend in passing. As the trier of fact, the trial court was free to believe all, part, or none of the testimony of any witness who appeared before it. *McBride*, 2012-Ohio-2146 at ¶ 19. The trial court simply chose to believe J.K. over Mother's witnesses.

{¶ 55} In light of the foregoing, we find that the evidence presented supports the trial court's determination that Mother's conduct, when the children were in her care, amounted to domestic violence under R.C. 3113.31(A)(1)(c), 2151.031(B), and 2919.22(A). J.K.'s testimony, if believed, established that Mother created a substantial risk to the health or safety of the children by violating a duty of care, protection, or support. *See Caramico*. The trial court's issuance of the DVCPO against Mother on behalf of the parties' children is therefore not against the manifest weight of the evidence.

{¶ 56} Mother's fourth assignment of error is overruled.

{¶ 57} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.