[Cite as *C.A.P. v. M.D.P.*, 2021-Ohio-3030.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| C.A.P., | : | |
| Petitioner-Appellee, | : | No. 109882 |
| v. | : | |
| M.D.P., | : | |
| Respondent-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 2, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DV-19-377122

***Appearances:***

Ellen S. Mandell, *for appellee.*

Michael Drain, *for appellant.*

LISA B. FORBES, J.:

{¶ 1} M.D.P. ("Respondent") appeals from the lower court's judgment entry that states that the domestic violence civil protection order ("DVCPO") issued against him "shall remain in full force and effect." After reviewing the facts of the case and pertinent law, we affirm the lower court's judgment.

{¶ 2} Respondent and C.A.P.'s ("Petitioner") marriage ended by dissolution in September 2018. Pertinent to this appeal, the parties have a child together, A.P., who was 12 years old when the hearing in this case took place. Petitioner and Respondent had shared parenting of A.P., who would rotate spending one week with each parent. Respondent has a history of mental-health issues and domestic-violence issues against Petitioner and A.P.

{¶ 3} In April 2019, A.P. was staying at Respondent's house while Petitioner was in Florida. Respondent told A.P. he was going to kill himself and left the house. Respondent also texted Petitioner that he was going to kill himself. When Respondent returned home, he would not let A.P. leave. Petitioner returned to Ohio two days later to get A.P.

{¶ 4} Petitioner did not allow Respondent to see A.P. after this incident, until he showed up at Petitioner's house on June 11, 2019, with prescriptions from the pharmacy for Petitioner and A.P. The next day, Petitioner filed a DVCPO against Respondent, and the court held an ex parte hearing and granted Petitioner's request.

{¶ 5} The court held a full hearing on the DVCPO on October 16, 2019. On October 24, 2019, the magistrate granted the DVCPO for approximately five years, with an expiration date of October 15, 2024. Respondent filed objections to the magistrate's decision, raising the following issues: 1) The evidence presented at the October 16, 2019 hearing does not support a finding of domestic violence as defined in R.C. 3113.[31](A)(1)(a); and 2) There was no evidence presented at the hearing of

an "act that placed another person by the threat of force in fear of imminent serious physical harm."

{¶ 6} On July 10, 2020, the court overruled Respondent's objections and "ordered that [the DVCPO] entered on October 25, 2019, shall remain in full force and effect." It is from this order that Respondent appeals.

## I. DVCPO Hearing Testimony

{¶ 7} The following people testified at the DVCPO hearing: A.P.; Respondent; Petitioner; Wihletta Davis, who is a counselor referred to the family by the Cuyahoga County Division of Children and Family Services; and Karen Dudley, who is Petitioner's sister.

{¶ 8} A.P. testified that Respondent choked her in 2017. Specifically, she testified that "he grabbed me by the neck and started carrying me to my bedroom. And then he threw me on the bed, sat on me, and then continued to choke me."

{¶ 9} A.P. also testified that in August 2018, she overheard Respondent telling Petitioner that he was going to "snap A.P.'s neck." A.P. called the police after she heard this and told them she did not feel safe. Additionally, A.P. testified that she "had experienced [Respondent] harming me before in the past. And it traumatized me to the point where I would believe he would do something harmful to me again."

{¶ 10} A.P. testified that she stayed with Respondent in April 2019 while Petitioner was in Florida. Respondent withheld A.P.'s medication and would not let her out of the house. Respondent threatened suicide and left the house. According

to A.P., "the screen door was jammed and no one could really get it open other than him."

{¶ 11} Additionally, A.P. testified that she has been diagnosed with depression and post-traumatic stress disorder ("PTSD"), was in counseling with an individual therapist and a family therapist, and takes "a number of medications" that are prescribed by a psychiatrist. A.P. testified that she is afraid of Respondent, does not feel safe with him, suffers from nightmares of him, and sleeps with a baseball bat.

{¶ 12} Respondent testified that he choked A.P., who was 11 years old at the time, after she punched him in the eye. Respondent admitted that he told Petitioner that he was going to snap A.P.'s neck, but he did not know A.P. was listening to the conversation. Respondent also admitted sending the following text message to Petitioner while she was in Florida and A.P. was in his custody:

> I have figured out the way I'm going to end it. Today's a good day for it. [A sibling] will get [A.P.]. She will be safe. I'm going to take an overdose of pills, and then get into my car and start driving, and see what happens. One of my kids will call you later today or tomorrow to tell you what happened. This is it. I mean it. I am living in hell. So I might as well go to hell. I will always love you. Take care of yourself and [A.P.]. This is the last rodeo. Goodbye.

{¶ 13} Petitioner corroborated the testimony that Respondent choked A.P. in 2017, and A.P. called the police. Petitioner did not corroborate Respondent's testimony that A.P. punched him first. Petitioner also corroborated the testimony that in August 2018, Respondent told Petitioner over the phone that he was going to "snap [A.P.'s] neck."

{¶ 14} Additionally, Petitioner testified that Respondent texted her in April 2019, threatening to kill himself and threatening to take A.P. to another state. During the week that Petitioner was in Florida, Respondent called her approximately 150 times. When Petitioner blocked Respondent's phone number, Respondent took A.P.'s phone to continue contacting Petitioner.

{¶ 15} Petitioner testified that she was in counseling and had been diagnosed as being codependent. Petitioner testified that she is afraid for her own and A.P.'s "emotional health and safety" because of Respondent. Asked whether she believed Respondent's threats, Petitioner testified "As much as I believed his threats over the last 10 years. What I have come to understand is [Respondent] uses those threats to control."

{¶ 16} Davis testified that A.P. suffers from PTSD and nightmares "that [Respondent] was going to come get her from her school." According to Davis, A.P. disclosed to her that Respondent choked her and held her hostage. Davis also testified that Petitioner corroborated A.P.'s disclosures. Furthermore, Davis testified that Petitioner suffers from PTSD and codependency.

{¶ 17} Dudley corroborated the testimony that Respondent choked A.P. in 2017. Dudley was living in Petitioner's home at the time and witnessed the incident. She did not see what occurred immediately prior to this, so she could not corroborate Respondent's testimony that A.P. punched him first. Dudley also corroborated testimony that A.P. sleeps with a baseball bat.

## II. Law and Analysis

### A. DVCPO

{¶ 18} A domestic relations court may issue a DVCPO under Civ.R. 65.1 and R.C. 3113.31. The Ohio Supreme Court has held that "when granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." R.C. 3113.31(D)." *Felton v. Felton*, 79 Ohio St.3d 34, 42, 649 N.E.2d 672 (1997). "Domestic violence" is defined, in pertinent part, as

> The occurrence of one or more of the following acts against a family or household member:
>
> * * *
>
> (ii) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;
>
> (iii) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code * * *.

R.C. 3113.31(A)(1)(a).

{¶ 19} R.C. 2903.211(A) governs menacing by stalking, and it states, in pertinent part, as follows: "(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person * * * or cause mental distress to the other person."

{¶ 20} R.C. 2151.03 defines, in part, an "abused child" as a child who "(D) Because of the acts of his parents * * * suffers physical or mental injury that harms or threatens to harm the child's health or welfare."

{¶ 21} In other words, a court may issue a DVCPO based on evidence of menacing by stalking or child abuse and both of these offenses may be established absent an "act that placed another person by the threat of force in fear of imminent serious physical harm."

## B. Standard of Review

{¶ 22} "[W]hen a respondent contends that it was error to issue a protection order, the question on review is whether there was sufficient credible evidence to support a finding that the respondent had engaged in acts or threats of domestic violence." *Abuhamda-Sliman v. Sliman*, 161 Ohio App.3d 541, 2005-Ohio-2836, 831 N.E.2d 453, ¶ 10 (8th Dist.). Furthermore, a "trial court's ruling on objections to a magistrate's decision will not be reversed absent an abuse of discretion." *In re M.I.S.*, 8th Dist. Cuyahoga No. 98138, 2012-Ohio-5178, ¶ 11.

## C. Domestic Relations Court Judgment Entry

{¶ 23} In overruling Respondent's objections to the magistrate's decision and upholding the DVCPO, the lower court found the following:

> [Respondent's] arguments focus almost completely on his claim that there is no "act" or "acts" committed by him which caused serious bodily harm or placed either [Petitioner] or A.P. by threat of force in fear of imminent serious harm. This argument is a "strawman" argument. Notwithstanding the evidence regarding the history of violence toward A.P., it is not necessary for there to be such evidence in order for a DVCPO to issue.

> The clauses of R.C. 3113.31(A)(1)(a)(ii) are written in the disjunctive: Domestic violence may consist of "[p]lacing another person by threat of force in fear of imminent serious physical harm" **or** "by committing a violation of section 2903.211 * * * of the Revised Code" **or** by "committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the revised

Code." As such, a DVCPO can issue on the basis of evidence of violations of R.C. 2903.211 and/or R.C. 2151.031 alone.

The Court finds the Magistrate properly found the evidence supporting a finding of domestic violence for each protected party. Because the basis for each finding is different, the Court will examine the evidence in the record regarding the findings of domestic violence with respect to the Petitioner as a protected person and A.P. as a protected person.

(Emphasis sic.)

{¶ 24} The lower court found that Respondent engaged in a pattern of conduct that knowingly caused mental distress to Petitioner, which are the elements needed to prove menacing by stalking as a subset of domestic violence. The court found that "[t]here is a long history of [Respondent] using abusive and emotional manipulation upon both [Petitioner] and A.P." The court found that "the only purpose" Respondent had in threatening suicide while Petitioner was in Florida and A.P. was staying with him "would be to cause fear and panic." The court noted that Petitioner "testified that while she was in Florida, Respondent called '150 times, over and over.'" The court overruled Respondent's objections to the magistrate's decision and ordered that the DVCPO "shall remain in full force and effect."

{¶ 25} The court found that in "November 2017, while the parties still lived together, [Respondent] strangled [A.P.], dragged her into a bedroom, sat on her and otherwise restrained her." In April 2019, Respondent "effectively locked A.P. in the house * * * telling her he was going to kill himself." The court found that "A.P.'s fear and the effect of [Respondent's] behavior on her mental health was corroborated by other witnesses" including Respondent, Dudley, and Davis. The lower court found that A.P. was an "abused child" as defined by R.C. 2151.031, and "there is competent

credible evidence in the record to support a finding of domestic violence with respect to A.P." when it ordered that the DVCPO "shall remain in full force and effect."

### D. Analysis

{¶ 26} Upon review, we find that there is sufficient credible evidence in the record to support a finding that Respondent engaged in acts or threats of domestic violence. In the lower court's well-reasoned judgment entry, it found that Respondent "has failed to show any error of law or other defect is evident on the face of the order, or that the credible evidence of record is insufficient to support the granting or denial of the protection order."

{¶ 27} Respondent's argument that there is no evidence of domestic violence because nothing was presented at the hearing showing "threat of force in fear of imminent serious physical harm" is without merit. The court found that Respondent committed domestic violence against Petitioner based on menacing by stalking. Menacing by stalking does not require a showing of "threat of force" or "physical harm." *See* R.C. 3113.31(A)(1)(a); 2903.211(A). *See also Caramico v. Caramico*, 12th Dist. Clermont No. CA2015-03-025, 2015-Ohio-4232, ¶ 27 ("Husband's argument that he did not commit the other acts contained in R.C. 3113.31, i.e., * * * by placing another person in fear of imminent serious physical harm, is without consequence as the trial court determined that Husband satisfied the relevant statute through his conduct constituting the act of menacing by stalking.").

**{¶ 28}** Additionally, the court found that Respondent committed domestic violence against A.P. based on child abuse, which can stem from a "mental injury." *See* R.C. 3113.31(A)(1)(a); R.C. 2151.03(D). *See also Lang v. Lang,* 2d Dist. Miami No. 2003-CA-34, 2004-Ohio-2035 (evidence that the child suffered a mental injury because of the father's threats amounted to child abuse, which supported a finding of domestic violence and the issuance of a DVCPO); *Kohus v. Daly*, 12th Dist. Clermont No. CA2015-05-042, 2016-Ohio-73 (a mother's conduct of leaving her young children in the car overnight while she worked amounted to child abuse, which supported a finding of domestic violence and the issuance of a DVCPO).

**{¶ 29}** Upon review, we hold that the lower court's findings of fact are supported by overwhelming evidence in the record, presented by each of the witnesses including the testimony and text messages of Respondent himself. The court did not abuse its discretion by upholding the DVCPO against Respondent, and both of his assignments of error are overruled. Accordingly, we affirm the lower court's judgment.

**{¶ 30}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry out this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
MICHELLE J. SHEEHAN, J., CONCUR