[Cite as *R.E.S. v. M.J.M.*, 2025-Ohio-546.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| R.E.S., | : | |
| Plaintiff-Appellant, | : | Nos. 113894 and 113895 |
| v. | : | |
| M.J.M., | : | |
| Defendant-Appellee. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 20, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case Nos. DV-23-397059 and DV-23-397088

***Appearances:***

Charles Tyler, Sr., *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} In this consolidated appeal, appellant, R.E.S., appeals judgments denying her petition for a domestic-violence civil protection order ("DVCPO") against appellee, M.J.M., and granting the petition for DVCPO filed by M.J.M. against her. R.E.S. claims the following errors:

1. The magistrate erred by arbitrarily limiting the presentation of petitioner's evidence to events that occurred since April 7, 2021, the last time petitioner filed a domestic violence civil protection order petition.

2. The court erred in finding that [M.J.M.] did not strike [R.E.S.].

3. The court erred in failing to protect [R.E.S.] pursuant to R.C. 3113.31.

4. The court considered the conduct of R.E.S.'s fiancé, which is an error of law.

5. [M.J.M.]'s communication through "Our Family Wizard" rises to the level of domestic violence pursuant to R.C. 3113.31.

6. The court erred in finding that [R.E.S.] committed domestic violence.

{¶ 2} We affirm the trial court's judgments.

## I. Facts and Procedural History

{¶ 3} On November 1, 2023, R.E.S. filed a petition for DVCPO against M.J.M. in Cuyahoga C.P. No. DV-23-397059. That same day, a magistrate of the domestic relations court conducted an ex parte hearing and granted an ex parte DVCPO in that case. On November 2, 2023, M.J.M. filed a petition for DVCPO against R.E.S. in Cuyahoga C.P. No. DV-23-397088. The court denied the petition in DV-397088 because it had already granted an ex parte DVCPO against M.J.M. in DV-397059, the previous day.

{¶ 4} On November 30, 2023, a magistrate held a hearing on the parties' competing petitions for DVCPO. The testimony and evidence presented focused primarily on an event that occurred at the Oakwood Village Police Department on October 31, 2023. R.E.S. and M.J.M. were never married, but they had a child

together. The child, R.M., was born on November 2, 2015, and the parties share custody of him.

{¶ 5} M.J.M. had custody of R.M. and agreed to deliver him to R.E.S. at the Oakwood Village Police Department on October 31, 2023. M.J.M. testified that he arrived at the Oakwood Village Police Department at the appointed time and waited for R.E.S. to arrive. Minutes later, R.E.S. entered the parking lot, drove toward M.J.M.'s car, and parked very close to M.J.M.'s car.

{¶ 6} R.E.S.'s fiancé ("C.L.") came with her to pick up R.M. R.E.S. testified that she got R.M. out of M.J.M.'s car and placed him in her own car. Meanwhile, she noticed "something going on between [M.J.M.] and [C.L.]." (Tr. 28.) R.E.S. could not open the driver's side door so she entered through the passenger side of her car and slid over to the driver's seat. She asserts in her brief that when she got into the driver's seat, she leaned out the window to see what was happening between M.J.M. and C.L. and M.J.M. struck her in the face. (Tr. 28.)

{¶ 7} M.J.M. described a different version of the incident. He testified that upon arrival, R.E.S. quickly exited her car, approached the back door of his car, and yanked, aggressively, on the door handle. After opening the door, R.E.S. pulled some of M.J.M.'s belongings out of the car before taking R.M. and placing him in her car. Meanwhile, R.E.S.'s fiancé, C.L., approached M.J.M. and threatened to kill him. (Tr. 52.) R.E.S. testified that she did not know why C.L. exited the vehicle. (Tr. 39.) M.J.M. explained the encounter as follows:

[C.L.] walks over to me, he says something, then starts saying, "I'm going to kill you." Comes back at me.

[R.E.S.] come back, then leaves again.

And then boom, he comes right at me.

I'm using my door as a barrier. She comes through the driver side and starts punching on me, two on one.

I take off and retreat, because he is an off-duty cop. I know he carries a weapon with him.

He goes after me.

I thought he had a gun.

(Tr. 52-53.) Finally, M.J.M. testified that every time he asks the juvenile court for more parenting time with R.M., R.E.S. files a petition for a DVCPO in order to prevent him from receiving additional parenting time. (Tr. 61.)

{¶ 8} Both parties presented video footage of the incident taken from the Oakwood Village Police Department surveillance camera. The video shows M.J.M. arrive first and back into a parking spot. Shortly thereafter, R.E.S.'s vehicle enters the parking lot and parks very closely, next to M.J.M.'s vehicle. After parking her car, R.E.S. walks over to the rear passenger's side of M.J.M.'s car and removes R.M. from the backseat. M.J.M. also exits his car and walks toward the back driver's side door of his car. At the same time, C.L. exits R.E.S.'s car and stands between the two vehicles facing M.J.M. As R.E.S. passes behind C.L., she lets go of R.M.'s hand, briefly walks between the cars where M.J.M. and C.L. are facing each other, and then retreats to place R.M. in her car.

{¶ 9} As R.E.S. is placing R.M. in her car, C.L. moves aggressively toward M.J.M. and a struggle ensues. After securing R.M. in the car, R.E.S. climbs through her vehicle and reaches through the window at M.J.M. As M.J.M. and C.L. move away from the cars, R.E.S. climbs out through the window. M.J.M. runs away, and C.L. follows him out of view of the camera. R.E.S. also runs out of view of the camera in another direction.

{¶ 10} R.E.S. testified that M.J.M. texted her several times through Our Family Wizard after he was aware of the existence of the ex parte civil protection order protecting R.E.S. M.J.M. explained that in the parties' custody case, which was then pending in the Cuyahoga County Juvenile Court, the court had ordered that visitation of the parties' child should continue despite the issuance of the ex parte civil protection order. M.J.M. testified he thought communication through Our Family Wizard was permitted despite the protection order because the parties continued to have shared visitation of their child.

{¶ 11} M.J.M. conceded on cross-examination that his messages contained inappropriate name calling and profanity. He explained, however, that he was expressing frustration because R.E.S. prevented him from visiting with his son even though the court explicitly ordered that visitation could continue. (Tr. 48.) M.J.M. argued that although he used profanity, he never threatened anyone with violence and never stalked anyone. (Tr. 48.)

{¶ 12} After hearing the testimony and viewing the surveillance-video footage, the magistrate found that the video evidence more closely matched M.J.M.'s

testimony regarding the incident. The magistrate further found that M.J.M.'s testimony was more credible than R.E.S.'s testimony.

{¶ 13} Based on the evidence, the magistrate concluded that R.E.S. and her fiancé, C.L., were the primary aggressors in the incident and that if M.J.M. struck R.E.S., he was acting in self-defense. (Magistrate's decision p. 3.) The magistrate further found that although M.J.M.'s text messages on Our Family Wizard contained inappropriate profanity, they did not rise to the level of domestic violence under R.C. 3113.31 because none of the messages threatened violence. Therefore, the magistrate found, in DV-397059, that R.E.S. failed to establish, by preponderance of the evidence, that M.J.M. committed an act or acts of domestic violence as defined in R.C. 3113.31. The magistrate also found that R.E.S. failed to establish, by a preponderance of the evidence, that either she or her household members were in danger of domestic violence. Finally, the court found, in DV-397088, that M.J.M. proved, by a preponderance of the evidence, that R.E.S. committed domestic violence as defined in R.C. 3113.31 and that M.J.M. was in danger of domestic violence. Accordingly, the magistrate granted M.J.M.'s petition for a DVCPO and denied R.E.S.'s petition.

{¶ 14} R.E.S. filed timely objections to the magistrate's decisions. The trial court reviewed the record, overruled the objections, and adopted the magistrate's decisions. R.E.S. now appeals the trial court's judgments.

## II. Law and Analysis

{¶ 15} To obtain a DVCPO under R.C. 3113.31, the petitioner must establish, by a preponderance of the evidence, "that petitioner or petitioner's family or household members are in danger of domestic violence." *Croone v. Arif*, 2014-Ohio-5546, ¶ 18 (8th Dist.), citing *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus. "Preponderance of the evidence means the greater weight of the evidence, or evidence that leads the trier of fact to find that the existence of a contested fact is more probable than its nonexistence." *Id.*, citing *State v. Stumpf*, 32 Ohio St.3d 95, 102 (1987).

{¶ 16} R.C. 3113.31(A)(1)(a) defines the term "domestic violence" as the occurrence of one or more of the following acts against a family or household member:

(i)     Attempting to cause or recklessly causing bodily injury;

(ii)    Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code;

(iii)   Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

(iv)    Committing a sexually oriented offense.

{¶ 17} "The statutory criterion to determine whether or not to grant a civil protection order pursuant to R.C. 3113.31 is the existence or threatened existence of domestic violence." *Tyler v. Tyler*, 2016-Ohio-7419, ¶ 18 (2d Dist.), quoting *Thomas*

*v. Thomas*, 44 Ohio App.3d 6, 8 (10th Dist. 1988). Explicit threats of domestic violence are not required in order to support the issuance of a civil protection order. Instead, statements, conduct, and actions, taken with all surrounding facts and circumstances, can constitute a threat. *See J.S. v. L.S.*, 2022-Ohio-2485 (10th Dist.).

{¶ 18} "'The decision whether to grant a . . . protection order [is] within the sound discretion of the trial court'" and will not be reversed absent an abuse of that discretion. *E.A. v. A.A.*, 2024-Ohio-2807, ¶ 37 (8th Dist.), quoting *Parrish v. Parrish*, 95 Ohio St.3d 1201, 1204 (2002). A court abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. An abuse of discretion may be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 2008-Ohio-1720, ¶ 15 (8th Dist.). An abuse of discretion also implies a decision that is unreasonable, arbitrary, or unconscionable. *State ex rel. DiFranco v. S. Euclid*, 2015-Ohio-4915, ¶ 13. When applying the abuse-of-discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Vannucci v. Schneider*, 2018-Ohio-1294, ¶ 22 (8th Dist.).

### A. Limitation on Evidence

{¶ 19} In the first assignment of error, R.E.S. argues the trial court erred by arbitrarily limiting the presentation of evidence to events that occurred since April 7, 2021, the last time R.E.S. filed a petition for a DVCPO. She contends this

limitation prevented her from establishing that her fear that M.J.M. would harm her was reasonable under R.C. 3113.31(A)(1)(a)(ii).

{¶ 20} R.E.S. did not object to the limitation on the presentation of evidence. (Tr. 8.) She, therefore, forfeited all but plain error. *Ohio Power Co. v. Burns*, 2022-Ohio-4713, ¶ 40, citing *State v. Quarterman*, 2014-Ohio-4034, ¶ 15 ("[A]n argument that is not timely raised is deemed forfeited and is reviewed for plain error.").

{¶ 21} Ordinarily, the party asserting plain error bears the burden of showing that the court made an obvious error that affected substantial rights, i.e., that it affected the outcome of the trial. *State v. Rogers*, 2015-Ohio-2459, ¶ 22. However, the plain-error doctrine is not favored in civil cases and "'may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *State ex rel. Target Auto Repair v. Morales*, 2022-Ohio-2062, ¶ 15, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997).

{¶ 22} As noted by R.E.S., the magistrate limited the presentation of evidence to events that occurred after April 7, 2021, the date of the hearing on R.E.S.'s last petition for DVCPO against M.J.M. However, the magistrate acknowledged the prior DVCPO and indicated that she would take judicial notice of it. Moreover, R.E.S. fails to explain what evidence she would have presented that would have demonstrated that she had a reasonable basis to fear that M.J.M. would

cause her serious physical harm.  We, therefore, have no way to determine whether the court's ruling prejudiced R.E.S.

{¶ 23} The video footage of the October 31, 2023 incident shows R.E.S. walking confidently toward M.J.M.'s back car door where she aggressively pulls the door handle to open the door.  The video also shows R.E.S. reaching out of the car attempting to grab or strike M.J.M.  In either case, she does not appear to be frightened of M.J.M.  Thus, the evidence presented at trial contradicts R.E.S.'s claim that she feared M.J.M. was going to harm her.

{¶ 24} Therefore, because R.E.S. cannot establish a claim for plain error in the restriction on the presentation of evidence, we overrule the first assignment of error.

## B.  Evidence M.J.M. Struck R.E.S.

{¶ 25} In the second assignment of error, R.E.S. argues the trial court erred in finding that M.J.M. did not strike her.  She contends the court's finding that M.J.M. did not strike her was against the manifest weight of the evidence.

{¶ 26} In determining whether a verdict in a civil bench trial is against the manifest weight of the evidence, we examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the verdict must be reversed and a new trial ordered.  *Sonis v. Rasner*, 2015-Ohio-3028, ¶ 53 (8th Dist.), citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 27} In weighing the evidence, we are guided by a presumption that the findings of the trier of fact are correct. *Id.* at ¶ 54, citing *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77 (1984). Thus, "a reviewing court will generally uphold a trial court's judgment as long as the manifest weight of the evidence supports it — that is, as long as 'some' competent and credible evidence supports it." *Patel v. Strategic Group*, *L.L.C.*, 2020-Ohio-4990, ¶ 20 (8th Dist.), quoting *MRI Software, L.L.C. v. W. Oaks Mall FL, L.L.C.*, 2018-Ohio-2190, ¶ 12 (8th Dist.).

{¶ 28} R.E.S. argues the court's finding that M.J.M. did not strike her is against the manifest weight of the evidence because R.E.S. made a police report immediately after the assault and her injuries were documented. M.J.M. never denied punching R.E.S. in the face; he testified that he did not remember punching her in the face. (Tr. 17.) Indeed, R.E.S. states in her brief that she was struck when she reached out the window of her car while M.J.M. and C.L. were fighting, which suggests she was struck accidentally.

{¶ 29} Moreover, the magistrate never found that M.J.M. did not strike R.E.S. The magistrate's decision in DV-397059 states, in relevant part, that R.E.S. and her fiancé, C.L., were the primary aggressors and that if M.J.M. "did indeed strike [R.E.S.], [he] was acting primarily in self-defense." Similarly, in DV-397088, the magistrate never found that M.J.M. did not strike R.E.S. Rather, the magistrate again found, based on the surveillance video, that R.E.S. and C.L. were the primary aggressors and that they repeatedly struck M.J.M. The transcript and video evidence support the magistrate's findings.

{¶ 30} Therefore, the second assignment of error is overruled.

## C. Failure to Protect

{¶ 31} In the third assignment of error, R.E.S. argues the trial court's finding that she failed to prove, by a preponderance of the evidence, that M.J.M. committed an act or acts of domestic violence as defined in R.C. 3113.31 is against the manifest weight of the evidence. She asserts that the photograph of her injuries coupled with her testimony that she was in fear of serious imminent harm conclusively established that M.J.M. committed domestic violence.

{¶ 32} As previously stated, R.C. 3113.31(A)(1)(a) defines the term "domestic violence" as the occurrence of one or more of the following acts against a family or household member:

(i) Attempting to cause or recklessly causing bodily injury;

(ii) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code;

(iii) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

(iv) Committing a sexually-oriented offense.

{¶ 33} R.E.S. testified at trial that M.J.M. punched her in the face. She also stated that she sustained a bruise on her left cheekbone as a result of the assault. (Tr. 28.) When asked whether R.E.S. was in fear at the time of the incident, she

replied: "Absolutely I was scared. I didn't know what else was going to happen to me that day." (Tr. 29.)

{¶ 34} R.E.S.'s testimony, if believed, would prove that an act of domestic violence occurred under R.C. 3113.31(A)(1)(a)(i) and (ii). However, the magistrate found that her testimony was not credible in light of the surveillance video showing that R.E.S. and C.L. were the primary aggressors. The video also shows R.E.S. reaching through the car window toward M.J.M. and contradicts her claim that she was in fear.

{¶ 35} M.J.M. asked R.E.S. on cross-examination whether she felt threatened at a particular point in the surveillance video, and she replied: "I wasn't punching yet, so not yet." (Tr. 38.) Therefore, R.E.S. admitted that she was not afraid of M.J.M. when she arrived to deliver R.M. to M.J.M. for parenting time. And the evidence shows that R.E.S. and C.L. initiated the violence that took place. Therefore, R.E.S.'s actions do not reflect a person who was frightened of M.J.M. Moreover, the evidence supports the magistrate's finding that if M.J.M. struck R.E.S., he struck her in self-defense.

{¶ 36} Therefore, the third assignment of error is overruled.

### D. R.E.S.'s Fiancé

{¶ 37} In the fourth assignment of error, R.E.S. argues the trial court erroneously considered the conduct of R.E.S.'s fiancé, C.L. She argues the court's finding that R.E.S. and C.L. were the primary aggressors is not supported by the evidence. She asserts, in relevant part:

But the only evidence that the court references in the opinion which discusses any "aggressor" is the fact that [R.E.S.] was leaning out of the vehicle grabbing at [M.J.M.] in an attempt to stop the altercation occurring between [M.J.M.] and [R.E.S.]'s fiancé after she has already been struck by [M.J.M.]. As such, the Court has clearly considered [R.E.S.]'s fiancé's conduct in the decision, [sic] and is a clear error of law.

Finally, as the facts make clear, [R.E.S.] leaning out of the vehicle to establish the cause of the events occurring outside the vehicle does not constitute a need for [M.J.M.] to act in "self-defense" against [R.E.S.], as the court incorrectly termed it.

(Appellant's brief p. 11.)

{¶ 38} R.E.S. testified that she did not know why C.L. exited her vehicle in the parking lot of the Oakwood Village Police Department. His conduct is nevertheless relevant to the issues presented because he was directly involved in the domestic dispute between R.E.S. and M.J.M. According to M.J.M., C.L. was an off-duty police officer who carried a weapon and threatened to kill M.J.M. M.J.M. also stated that C.L. began punching him and that R.E.S. climbed through the vehicle, reached out the car window, and began punching him as well.

{¶ 39} In making her findings, the magistrate's decision relied heavily on the police surveillance video of the incident. The magistrate's decision states, in relevant part:

While the video is somewhat unclear, [R.E.S.] can be seen lunging toward [M.J.M.] as she walks around the vehicles with the child and [R.E.S.]'s fiancé then moves between the vehicles while [R.E.S.] goes to the other side of her vehicle and places the child in the car. [R.E.S.]'s fiancé aggressively moves toward [M.J.M.], and a struggle can be seen between the two of them. [R.E.S.] then climbs through her vehicle and can be seen leaning out grabbing at/striking at [M.J.M.]. At no time in the video is it evidence that [M.J.M.] ever strikes [R.E.S.], however

[R.E.S.]'s fiancé can be seen striking at [M.J.M.] several times. M.J.M. then runs away and [R.E.S.]'s fiancé follows him. The video shows [R.E.S.]'s fiancé repeatedly moving toward [M.J.M.] aggressively and then throwing [M.J.M.]'s dropped cell phone at [M.J.M.]

The Court finds that the video evidence offered by both parties more closely matches [M.J.M.]'s testimony of the event. The court therefore finds [M.J.M.]'s testimony more credible than [R.E.S.]'s testimony. The evidence establishes that [R.E.S.] and her fiancé were the primary aggressors in this incident and that [M.J.M.], if he did indeed strike [R.E.S.], was acting in self-defense.

(Denial of Civil Protection Order After Full Hearing, R. 20 in DV-397059.)

{¶ 40} The video evidence and M.J.M.'s testimony establish that C.L. attacked M.J.M. and that, as a result, M.J.M. acted in self-defense. The video further demonstrates that R.E.S. joined C.L. when she reached out of car window in an apparent attempt to grab or hit M.J.M. C.L.'s conduct is relevant to explain M.J.M.'s actions in self-defense, to show that R.E.S. and C.L. were the primary aggressors, and to show that M.J.M. was not a primary aggressor. Therefore, the trial court did not err in considering C.L.'s conduct.

{¶ 41} The fourth assignment of error is overruled.

### E. Our Family Wizard Communications

{¶ 42} In the fifth assignment of error, R.E.S. argues that M.J.M.'s communications through "Our Family Wizard" rise to the level of domestic violence under R.C. 3113.31. She argues the communications violated the temporary, ex parte, DVCPO issued on November 1, 2023, and that such criminal behavior is evidence of domestic-violence behavior.

{¶ 43} M.J.M. admitted that he communicated with R.E.S. on Our Family Wizard after the ex parte DVCPO was issued. He stated, however, that he thought the communications were permissible because the parties were still engaged in the shared parenting of their minor child. M.J.M. also admitted that he used profanity in the messages and that he called R.E.S. names. M.J.M. explained, however, that he was expressing frustration because R.E.S. had refused to give him the child when it was his time for parenting. (Tr. 47-48.)

{¶ 44} The trial court found that although M.J.M.'s communications were rude and technically in violation of the ex parte DVCPO, none of the messages communicated any stalking or threats of violence. Having reviewed the transcript of the messages, we agree that although the messages were inappropriate, they did not cause any bodily injury, nor did they express any stalking or a threat of force that could have put R.E.S. in fear of imminent serious physical harm. Therefore, M.J.M.'s messages did not rise to the level of domestic violence as defined by R.C. 3113.31(A)(1)(a).

{¶ 45} The fifth assignment of error is overruled.

### F. Domestic Violence

{¶ 46} In the sixth assignment of error, R.E.S. argues the trial court erred in finding that she committed domestic violence. She contends the trial court's finding is not supported by the evidence.

{¶ 47} R.C. 3113.31(A)(1)(a)(i) defines "domestic violence" in part as "[a]ttempting to cause or recklessly causing bodily injury[.]" M.J.M. testified that

after R.E.S. secured the child in the car, she reached through the driver's side window and began punching him. (Tr. 53.) As previously stated, the surveillance video shows R.E.S. reaching out of the car in an attempt to hit or grab M.J.M. and thus corroborates his testimony. Despite R.E.S.'s characterization of the evidence, the record clearly supports the trial court's finding that R.E.S. attempted to cause bodily harm to M.J.M. and that she, therefore, committed domestic violence.

{¶ 48} The sixth assignment of error is overruled.

{¶ 49} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, P.J., and
DEENA R. CALABRESE, J., CONCUR