[Cite as *M.L.H. v. S.R.S.*, 2025-Ohio-5860.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

M.L.H.,                                              :

    Petitioner-Appellee,           :                 No. 115152

    v.                                      :

S.R.S., II,                                          :

    Respondent-Appellant.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 31, 2025

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Domestic Relations Division
Case No. DV-24-401281

---

### *Appearances:*

S.R.S., II, *pro se.*

Stephen P. Hanudel, *for appellee.*

MICHELLE J. SHEEHAN, P.J.:

{¶ 1} Respondent-appellant S.R.S., II ("Respondent") appeals the domestic relations court granting petitioner-appellee M.L.H.'s ("Petitioner") petition for a domestic violence civil protection order ("DVCPO") against Respondent. Respondent claims that the evidence presented at the full hearing on the petition is

insufficient to support the court's order and that the court's judgment is against the manifest weight of the evidence. Respondent also challenges the scope of the DVCPO, alleging that it is "overly restrictive, prejudicial and burdensome[.]"

{¶ 2} Upon a thorough review of the record, we find that the lower court's judgment is supported by sufficient evidence, is not against the manifest weight of the evidence, and is not overly restrictive, prejudicial, or burdensome. For the following reasons, we affirm the judgement of the court below.

## I. Procedural History and Relevant Facts

### A. Relevant Facts

{¶ 3} Petitioner is an associate professor at Cleveland State University, Monte Ahuja College of Business. Respondent has been a licensed attorney in the State of Ohio since 2003. The two were married for seven years and have two children together, ages six and four. They separated in July 2021, and their marriage officially ended in divorce in September 2023 in Cuyahoga D.R. No. DR-21-387421 ("the divorce case"). They have been involved in post-decree litigation in that case ever since, wherein Respondent has represented himself pro se. Petitioner has been represented by counsel in the post-decree litigation since July 8, 2024.

### 1. Legal Filings — Service

{¶ 4} On February 20, 2024, while litigation was ongoing in the divorce case, Respondent, acting pro se, filed a lawsuit against Petitioner, in Cuyahoga C.P. No. CV-24-993122, which was eventually dismissed by Respondent. When the lawsuit was filed, Respondent requested the clerk to serve the filing at Petitioner's

home address and her place of employment, Cleveland State University, Monte Ahuja College of Business, Dean's Office. On May 23, 2024, Respondent filed a separate motion in the unrelated divorce case. He again requested the clerk to serve Petitioner at her home address and her place of employment, Cleveland State University, Monte Ahuja College of Business, Dean's Office.

{¶ 5} On June 3, 2024, the Dean of the Cleveland State University, Monte Ahuja College of Business sent a cease-and-desist letter to Respondent advising him to stop serving Petitioner at the Dean's office. Respondent acknowledged that he had received the cease-and-desist letter but continued to serve Petitioner at her place of employment and instructed the clerk to serve the Dean's office on at least six additional occasions.

{¶ 6} In the divorce case, Respondent filed multiple filings in which he instructed the clerk to serve her place of employment, even after the cease-and-desist letter was sent and while she was represented by counsel. On the following dates, Respondent requested the clerk to serve Petitioner at her place of employment: August 1, 2024, August 22, 2024, September 16, 2024, October 8, 2024, January 21, 2025, January 28, 2025, February 14, 2025, March 20, 2025, and March 25, 2025. In Cuyahoga C.P. No. CV-24-102000, Respondent had refiled the civil case against Petitioner and requested the clerk to serve Petitioner at her place of employment on the following date: August 13, 2024. Respondent filed another civil case against Petitioner and requested the clerk to serve Petitioner at her place of employment on the following date: February 11, 2025.

## 2. Specific Incidents

### a. March 10, 2024 — Welfare Check

{¶ 7} The custody arrangement between the parties designates Petitioner as the residential parent. Respondent has parenting time with the children every Wednesday evening until the next day and every other weekend during which time the children stay at Respondent's residence.

{¶ 8} Petitioner and Respondent communicate through a program called "Our Family Wizard." The children were with Respondent at his residence on March 10, 2025, when Petitioner testified that she received a message that one of her children had vomited and that the child had been given medicine. Petitioner was concerned, stating that the child had a history of strep throat. Petitioner called the police to request a welfare check be conducted to make sure her children were okay. Petitioner testified that she did not go to Respondent's house herself "because in the past, there's been a high conflict situation" and she stated that she wanted to avoid a confrontation with Respondent. Officer Bambauer of the Cleveland Heights Police Department conducted the welfare check and ultimately determined the children were okay but just sick. He testified that it was a "fairly normal" welfare check.

{¶ 9} The following day, when the children were back in Petitioner's custody, Petitioner and Respondent were communicating via a Facetime call. A video of that call was introduced as Petitioner's Exhibit R. On the video, Respondent can be heard saying something along the lines of "[t]hat's the last time you're calling

the cops on me. Do it again. Do it again." Respondent can also be heard saying: "So you got your last time to call the cops to my house and then come to my house when I tell you not to come. So keep doing this and see what happens." Petitioner testified that this conversation made her feel scared and intimidated.

{¶ 10} Respondent testified that what he said was not meant as a physical threat. Rather, he explained that what he meant was that he was "going to take appropriate legal action against her, whether it's criminal or civil."

### b. September 2024 — MetroHealth Incident

{¶ 11} In September 2024, prior to filing for the DVCPO, Petitioner stated she and Respondent were at MetroHealth attending therapy with their son. Petitioner testified that as they were exiting an elevator, Respondent started to get upset about a haircut that their son had received. Respondent kept getting louder and louder, eventually calling her a "cunt." Petitioner testified that Respondent then told their son, "I can't wait to tell you later about your mom." Petitioner stated that during this interaction, she was fearful for her physical safety. She contacted MetroHealth security and made a report.

{¶ 12} Respondent claims that Petitioner was untruthful concerning this incident. Respondent testified that he was having a conversation with the doctor regarding his son's medical diagnosis and condition and that he mentioned that he had been blocked from getting access to medical records. He stated that Petitioner suddenly jumped up and "explode[d] in anger and direct[ed] the doctor to call the

police." Respondent speculated that Petitioner did this because she did not want it to get out that she had blocked his access to medical records.

{¶ 13} Petitioner testified that she is concerned for her safety and well-being with respect to Respondent. She explained that she believes things are escalating in that this situation has made it to her place of employment. She also stated that she does not feel safe when she is around Respondent in one-on-one situations.

### B. DVCPO Procedural History

{¶ 14} On September 9, 2024, Petitioner filed a petition for a DVCPO against her ex-husband, Respondent ("the DVCPO case"). The petition indicated that Respondent had "made open threats during a facetime call with the kids." It also stated that Respondent had been serving her with legal filings at her home and at her place of work addressed to the Dean's office at Cleveland State University, Monte Ahuja College of Business. The petition alleged that Respondent continued to serve these filings at the Dean's office, even after being sent a cease-and-desist letter. An ex parte DVCPO was issued the same day.

{¶ 15} A full evidentiary hearing was held on April 4, 2025. On April 23, 2025, the lower court granted Petitioner's request for a DVCPO. Petitioner is the only protected party listed on the order. The DVCPO provides, in relevant part, that Respondent is not to (1) contact Petitioner, (2) be present within 500 feet of Petitioner, (3) interfere with Petitioner's residence, school, business, or place of employment, or (4) use any form of electronic surveillance on Petitioner.

{¶ 16} It is this DVCPO from which Respondent appeals. He raises the following three assignments of error for our review:

1. The trial court erred in granting [DVCPO] as the evidence that [Petitioner] presented was insufficient to meet the standard required pursuant to R.C. 3113.31.

2. The Judgment in favor of [Petitioner] was against the manifest weight of the evidence.

3. The trial court's [DVCPO] is overly restrictive, prejudicial and burdensome as it prohibits [Respondent] from attending the school activities, doctor's appointments and extracurricular activities of the parties' minor children despite the minor children not being protected parties pursuant to the [DVCPO.]

## II. Law and Argument

### A. First Assignment of Error — Sufficiency of the Evidence

{¶ 17} In his first assignment of error, Respondent alleges that the evidence was insufficient to support the DVCPO issued by the domestic relations court. Since we find that the evidence presented at the full hearing is sufficient to support the court's issuance of the DVCPO, we overrule Respondent's first assignment of error.

#### 1. Applicable Law

#### a. DVCPO

{¶ 18} R.C. 3113.31 governs issuances of DVCPO's in Ohio. To obtain a DVCPO, "the petitioner must establish, by a preponderance of the evidence, 'that petitioner or petitioner's family or household members are in danger of domestic violence.'" *R.E.S. v. M.J.M,* 2025-Ohio-546, ¶ 15 (8th Dist.), quoting *Croone v. Arif,* 2014-Ohio-5546, ¶ 18 (8th Dist.), citing *Felton v. Felton,* 79 Ohio St.3d 34 (1997),

paragraph two of the syllabus. R.C. 3113.31(A)(1)(a) defines "domestic violence," in pertinent part, as the occurrence of one or more of the following acts against a family or household member:

> (i) Attempting to cause or recklessly causing bodily injury;
>
> (ii) Placing another person by threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;

{¶ 19} R.C. 2903.211(A)(1) governs the offense of menacing by stalking, and it provides, in relevant part: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person . . . or cause *mental distress* to the other person[.]" (Emphasis added.)

### b. Standard of Review

{¶ 20} The decision to grant a protection order lies within the discretion of the trial court and "will not be reversed absent an abuse of that discretion." *R.E.S.* at ¶ 18, citing *E.A. v. A.A.,* 2024-Ohio-2807, ¶ 37 (8th Dist.). Abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, not merely that an appellate court might have reached a different conclusion. *State v. Morris*, 2012-Ohio-2407, ¶ 14. With respect to the issuance of a DVCPO, the question on review thus becomes "'whether there was sufficient credible evidence to support a finding that the respondent had engaged in acts or threats of domestic violence.'" *C.A.P. v. M.D.P.,* 2021-Ohio-3030, ¶ 22 (8th Dist.), quoting *Abuhamda-Sliman v. Sliman,* 2005-Ohio-2836, ¶ 10 (8th Dist.). "We must be mindful that

when applying the abuse of discretion standard, 'we should not substitute our judgment for that of the trial court.'" *T.C. v. R.B.C.,* 2025-Ohio-1554, ¶ 10 (8th Dist.), quoting *Mills v. Mills,* 2025-Ohio-452, ¶ 28 (8th Dist.).

### c. Analysis

{¶ 21} Respondent argues that the evidence does not support the lower court's issuance of the DVCPO since there was no physical contact or threats of bodily harm made by Respondent towards Petitioner. Respondent directs this court to the fact Petitioner testified that Respondent never physically threatened or assaulted Petitioner.

{¶ 22} However, ""[t]he statutory criterion to determine whether or not to grant a civil protection order pursuant to R.C. 3113.31 is the existence or threatened existence of domestic violence."" *R.E.S.,* 2025-Ohio-546, at ¶ 17 (8th Dist.), quoting *Tyler v. Tyler,* 2016-Ohio-7419, ¶ 18 (2d Dist.), quoting *Thomas v. Thomas,* 44 Ohio App.3d 6, 8 (10th Dist. 1988). "Explicit threats of domestic violence are not required in order to support the issuance of a civil protection order. Instead, statements, conduct, and actions, taken with all surrounding facts and circumstances, can constitute a threat." *R.E.S.* at ¶ 17, citing *J.S. v. L.S.,* 2022-Ohio-2485 (10th Dist.)

{¶ 23} Here, the evidence was sufficient to support a finding that Respondent's conduct caused or may cause mental distress to Petitioner in violation of R.C. 2903.211 (menacing by stalking). R.C. 2903.211(A)(1) defines mental distress as any of the following:

(a) Any mental illness or condition that involves some temporary substantial incapacity;

(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

{¶ 24} We have recognized that "a court may issue a DVCPO based on evidence of menacing by stalking . . . [and] may be established absent an 'act that placed another person by the threat of force in fear of imminent serious physical harm.'" *C.A.P.,* 2021-Ohio-3030, at ¶ 21 (8th Dist.).

{¶ 25} A video of a Facetime call between Respondent and Petitioner was presented at the hearing. The call took place the day following the welfare check. In the video, Respondent can be heard saying to Petitioner: "That's the last time you're calling the cops on me. Do it again. Do it again" and "So you got your last time to call the cops to my house and then come to my house when I tell you not to come. So keep doing this and see what happens." As a result, Petitioner testified that she felt scared and intimidated. She explained that she did not know what would happen next.

{¶ 26} Another incident occurred a few months later at MetroHealth. Petitioner testified that while Petitioner was with Respondent at a therapy appointment with their son, Respondent got upset about a haircut her son had received, leading Respondent to call her a "cunt." This led to Petitioner contacting MetroHealth security and filing a report. Petitioner testified that she was fearful of "what was going to come next like."

{¶ 27} Respondent disputes Petitioner's testimony concerning the MetroHealth incident, going so far as calling it "untruthful." However, a claim of insufficiency questions "whether the evidence is legally sufficient to support a verdict as a matter of law." *State v. Parker,* 2022-Ohio-1237, ¶ 7 (8th Dist.), citing *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). Thus, we will not consider the credibility of a witness when reviewing whether there was sufficient evidence to support the lower court's findings. *In re C.A.,* 2015-Ohio-4768, ¶ 51 (8th Dist.), citing *State v. Williams,* 2013-Ohio-1181, ¶ 27 (8th Dist.). As such, "[t]he testimony of one witness, if believed by the factfinder, is enough." *Id.,* citing *State v. Adams,* 2014-Ohio-4233, ¶ 14 (5th Dist.).

{¶ 28} Petitioner presented multiple legal filings filed by Respondent wherein Respondent had instructed the clerk of courts to serve upon Petitioner at her place of employment and her home residence. R.C. 2903.211(A)(1) provides that a person's mental distress "may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that *employs* the other person or to which the other person belongs." (Emphasis added.) R.C. 2903.211(A)(1). Respondent continued to instruct the clerk to serve Petitioner at her place of employment for multiple legal filings, even after Petitioner had obtained counsel in the divorce case and the Dean of the Cleveland State University, Monte Ahuja College of Business had sent a cease-and-desist letter to Respondent.

{¶ 29} Petitioner testified that while she was being served with these filings at her place of employment, other faculty members became aware of legal filings

that had been mailed to her. Other faculty members had come up to her asking her if they are safe, or if they had anything to worry about concerning these filings. Petitioner stated that at least ten people from the university approached her concerning these filings.

{¶ 30} As a result, Petitioner testified that she had to have discussions with the police chief and general counsel. The provost of the university also contacted her. She became distraught and worried about losing her job. She stated that she was stressed every day with other people she worked with questioning her and asking her if the other party is going to come to the school. Her colleagues were concerned for their own safety.

{¶ 31} Respondent states that service of filings through the clerk at Petitioner's place of employment was lawful and cannot be considered "harassment." Civ.R. 5(B)(1) provides, in relevant part, that "[i]f a party is represented by an attorney, service under this rule shall be made on the attorney unless the court orders service on the party." On July 8, 2024, an attorney for Petitioner filed a notice of appearance in the divorce case. Respondent does not direct us to anywhere in the record where the lower court ordered service to be made on Petitioner rather than her attorney. Nonetheless, on multiple occasions after Petitioner obtained counsel, Respondent continued to instruct to clerk to serve Petitioner rather than her attorney at her place of employment even though he was not required to do so.

{¶ 32} In viewing the totality of the evidence presented at the full hearing, we find that there was sufficient credible evidence to support a finding that the DVCPO was necessary to protect Petitioner from domestic violence, i.e. menacing by stalking pursuant to R.C. 2903.211. Accordingly, Respondent's first assignment of error is overruled.

**B. Second Assignment of Error – Manifest Weight of the Evidence**

{¶ 33} In his second assigned error for review, Respondent contends that the lower court's judgement granting the DVCPO is against the manifest weight of the evidence that was presented at the full hearing.

**1. Standard of Review**

{¶ 34} In contrast to a sufficiency challenge, a challenge with respect to the weight of the evidence concerns """the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.""" *State v. Hughes-Davis,* 2025-Ohio-3151, ¶ 24 (8th Dist.), quoting *Eastley v. Volkman,* 2012-Ohio-2179, ¶ 12, quoting *Thompkins,* 78 Ohio St.3d at 387. The Ohio Supreme Court has stated that when conducting a manifest-weight review, the reviewing court "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.,* 2023-Ohio-4703, ¶ 14, citing *Eastley* at ¶ 20.

{¶ 35} In conducting this review, the Ohio Supreme Court noted that we must be mindful of the presumption in favor of the finder of fact and, "'[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Parma Hts. v. Brett,* 2025-Ohio-4, ¶ 21 (8th Dist.), quoting *In re Z.C.* at ¶ 14. The underlying rationale of giving deference to the findings of the finder of fact is that "the finder of fact is in the 'best position to view the witnesses and observe their demeanor, gestures, and voice inflections that are critical observations in determining the credibility of a witness and his or her testimony.'" *State v. Jones,* 2025-Ohio-2866, ¶ 47 (8th Dist.), quoting *State v. Sheline,* 2019-Ohio-528, ¶ 100 (8th Dist.). As such, a manifest-weight-of-the-evidence challenge will be sustained "'"only in the exceptional case in which the evidence weighs heavily against the conviction."'" *State v. Dodson,* 2025-Ohio-1733, ¶ 12 (8th Dist.), quoting *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983).

### 2. Analysis

{¶ 36} Respondent raises the same claims made in his sufficiency claim above only now he challenges the credibility of Petitioner's testimony claiming that it contained "numerous inconsistencies and unsubstantiated allegations" and that the lower court's decision was "based disproportionately on [Petitioner's] subjective fears rather than objective evidence[.]"

{¶ 37} While Respondent claims that Petitioner's testimony contained numerous inconsistencies, he fails to direct this court any specific inconsistencies. In short, Respondent claims that the lower court "ignored or discounted" Respondent's testimony, which he believes is more credible than Petitioner's. It is well-established that a "finder of fact is free to believe some, all, or none of a witness's testimony." *Melenick v. McManamon,* 2010-Ohio-1051, ¶ 28 (8th Dist.), citing *State v. Ghaster,* 2009-Ohio-2134, ¶ 46 (8th Dist.).

{¶ 38} After reviewing all the evidence presented at the full hearing, we cannot say that this is one of those exceptional cases where the court's decision is against the manifest weight of the evidence. Accordingly, Respondent's second assignment of error is overruled.

### C. Third Assignment of Error — Scope of the DVCPO

{¶ 39} In his third and final assigned error for review, Respondent challenges the scope of the DVCPO. Respondent claims the DVCPO violates his constitutional right to parent his children because its terms "unduly restrict[ him] from attending educational and extracurricular activities, despite the absence of allegations or evidence of harm or threats towards the minor children."

### 1. Standard of Review

{¶ 40} We have held that "[b]ecause R.C. 3113.31 expressly authorizes the courts to craft protection orders that are tailored to the particular circumstances, it follows that the trial court has discretion in establishing the scope of a protection order and that judgment ought not be disturbed absent an abuse of discretion."

*Abuhamda-Sliman,* 2005-Ohio-2836, at ¶ 9 (8th Dist.). As such, we will not disturb the scope of the lower court's DVCPO absent a showing that the court abused its discretion.

**2. Analysis**

{¶ 41} Respondent argues the scope of the DVCPO is overly broad and interferes with his fundamental right to parent because it prevents him from attending his children's extracurricular events and school activities "simply because Petitioner may be present." We recognize that "the 'right to parent one's children is a fundamental right.'" *In re B.W.,* 2015-Ohio-2768, ¶ 21 (8th Dist.), quoting *In re C.F.,* 2007-Ohio-1104, ¶ 28, citing *Troxel v. Granville,* 530 U.S. 57, 66 (2000). This right includes the "right of parents to make decisions concerning the care, custody, and control of their children." *Troxel* at 66.

{¶ 42} As a preliminary matter we note there is nothing specific in the DVCPO preventing Respondent from making decisions concerning the care, custody, and control of his children.

{¶ 43} To the extent that Respondent argues that the collateral consequences arising from the terms of the DVCPO violate his fundamental constitutional right to parent his children, this issue was neither raised below nor addressed by the lower court. This court has consistently held that we "'will not consider a question not presented, considered or decided by a lower court.'" *First Rehab. Funding, LLC v. Milton,* 2025-Ohio-2677, ¶ 23 (8th Dist.), quoting *Spy v.*

*Arbor Park Phase One Assoc.,* 2020-Ohio-2944, ¶ 16 (8th Dist.). Since this constitutional issue was not addressed below, we decline to address it now.

{¶ 44} Respondent also claims that there was no evidence that Respondent caused harm or made threats to the minor children, and therefore the DVCPO is overbroad. But again, the only protected person listed on the DVCPO is Petitioner, not the children. The purpose of a DVCPO is to "'"prevent the type of persistent and threatening harassment that leaves victims in constant fear of physical danger or mental distress."'" *J.A.C. v. A.L.,* 2022-Ohio-2275, ¶ 18, quoting *McKinley v. Kuhn,* 2011-Ohio-134, ¶ 14 (4th Dist.), quoting *Kramer v. Kramer,* 2002-Ohio-4383, ¶ 17 (3d Dist.). Whether there was evidence of threats or harm made towards the children is irrelevant with respect to DVCPO naming the Petitioner as the sole protected person.

{¶ 45} Here, the trial court's order is tailored to prevent future harassment of Petitioner from Respondent. Petitioner is the only protected person listed on the DVCPO. Respondent is ordered, in relevant part, to (1) "not be present within 500 feet" of Petitioner, (2) "not interfere with the residence, school, business, place of employment" of Petitioner, and (3) "not initiate or have any contact with [Petitioner] or their residences, businesses, [or] places of employment." In light of the evidence presented at trial as discussed above, we find that the scope of the order was tailored to prevent Petitioner from suffering from the mental distress inflicted by Respondent in person and at her place of employment.

{¶ 46} Accordingly, we find that the court's issuance of the DVCPO was tailored to prevent Petitioner from future harm or mental distress caused by Respondent. As a result, the trial court did not abuse its discretion with respect to the scope of the DVCPO. Respondent's third assignment of error is overruled.

## III. Conclusion

{¶ 47} We affirm the judgment of the domestic relations court. The trial court did not abuse its discretion by issuing the DVCPO in favor of Petitioner against the Respondent, since there was sufficient evidence presented below to support the court's order and that the court's order was not against the manifest weight of the evidence. Nor do we find that the DVCPO is overbroad in scope.

{¶ 48} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, PRESIDING JUDGE

WILLIAM A. KLATT, J.,* CONCURS;
EMANUELLA D. GROVES, J., DISSENTS (WITH SEPARATE OPINION)

(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court of Appeals.)


EMANUELLA D. GROVES, J., DISSENTING:

**{¶ 49}** Respectfully, I dissent from the resolution of the third assignment of error.  I agree with the majority opinion's resolution of the first and second assignments of error.  However, I would find that DVCPO's scope is overly broad since it does not make any accommodations for Respondent's shared-parenting responsibilities.

**{¶ 50}** I recognize that the record before us does not include an overabundance of information regarding Respondent's argument that the scope of the DVCPO interferes with his fundamental right to parent his children by preventing him from attending their extracurricular events, school activities, and appointments.  I further recognize that Respondent's argument is being further developed through his pending motion to modify the DVCPO.

**{¶ 51}** However, the record before us does, in fact, establish that Respondent and Petitioner have two children whom they co-parent.  The record further reveals

that Respondent and Petitioner both attend certain child-related events and have procedures in place for picking up and dropping off their children. Nevertheless, the DVCPO orders Respondent to "not be present within 500 feet of Petitioner" and does not make any accommodations for the Respondent and Petitioner's children or their parenting responsibilities. Thus, while the order only lists the Petitioner as a protected person, the broad 500-foot restriction — absent any provision allowing for the Respondent and Petitioner's shared-parenting arrangement — effectively encompasses the children any time Petitioner is present. Consequently, the DVCPO's scope goes beyond the mere prevention of Respondent's future harassment of the Petitioner.

{¶ 52} To compare, in *In re R.K.*, 2020-Ohio-35, ¶ 79-81 (8th Dist.), we found that the trial court carefully considered the totality of the circumstances in crafting the scope of a protection order. There, the petitioner and respondent attended the same school and their families lived next door to each other. The trial court considered the close proximity of the families, making accommodations for sidewalks and bus stops, and did not impose any conditions that would significantly disrupt the education of either party. We concluded that the scope of the protection sufficiently protected the petitioner and her family without unnecessarily burdening the respondent and his family. Unlike *In re R.K.*, the trial court in this case did not consider the totality of the circumstances — namely, that Respondent and Petitioner are co-parents — and the DVCPO's scope unduly intrudes on Respondent's ability to care for and be present with his children.

**{¶ 53}** Accordingly, I would find that the trial court abused its discretion by including a broad 500-foot restriction in the DVCPO without accounting for any of Respondent's parenting responsibilities.  Therefore, I would sustain Respondent's third assignment of error, reverse the judgment, and remand the matter for the trial court to impose a less restrictive condition in consideration of Respondent's shared-parenting arrangement.